(No. 24006.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.*
GOTTLIB J. FRICK *et al.* Appellees.

*Opinion filed December 15, 1937.*

Charles C. Murrah, Otis Gallimore, and E. E. Denison, for appellant.

D. L. Duty, for appellees.

Mr. Justice Orr delivered the opinion of the court:

The principal questions here have to do with the right of a sheriff who is also *ex-officio* county collector, to set off various counterclaims for money due him for feeding prisoners, deputy hire and other expenses, against tax collection received by him as *ex-officio* collector. As public revenues are involved, the cause comes here by direct appeal from the circuit court of Williamson county.

An action of debt was brought in the name of the People for the use of Williamson county against G. J. Frick and the Massachusetts Bonding and Insurance Company, on the collector's official bond. The suit was for the recovery of a total of $32,506.89, claimed due for taxes collected by Frick in the following amounts: County taxes, $11,666.05, town taxes, $2755.27, tax-sales fees, $199, earned fees of the office of collector, $17,886.57. No State revenues were involved. Answers were filed and a special defense was interposed on the part of the bonding company reciting that its bond covered only moneys collected as taxes in Williamson county for the year 1934 and did not cover any part of the fees claimed in the sum of $17,886.57. As a further special defense, the bonding company alleged that the county collector tendered and offered to pay to the

county of Williamson its orders and warrants previously issued to Frick in an amount equal to, or greater than, the amount claimed by the county. The defendant Frick also filed a counterclaim, setting up an alleged indebtedness of the county to him in the sum of $23,508.38 for labor and services as sheriff and *ex-officio* collector, which counterclaim, together with the amount of $17,886.57 claimed due him as fees, left the county owing him an alleged sum of $8888.06, for which he demanded judgment. Upon motion for a bill of particulars, the same was furnished by Frick, with copies of various county orders issued by the county board for various purposes and at different times, in former years, in the aggregate sum of $21,963.38. After a hearing before the trial judge without a jury, the court found that the collector had tendered to the county treasurer various county orders amounting to $8829.70 and offered the same as a set-off to the claim of the county and had kept the tender good, but that the county had refused to accept the tender or allow the counterclaim; that in addition to these county orders, Frick, as sheriff, had paid out the sum of $5367.03 for deputy sheriff's salaries, fees and expenses, connected with the office of sheriff of Williamson county, in excess of all other fees collected by him; that Frick was entitled to recover these two sums of $8829.70 for feeding prisoners and $5367.03 for deputy hire, etc., together with a further sum of $224.45 on account of a county order accepted by Frick in payment of taxes of a telephone company. The court further found that Frick, as county collector, was indebted in the sum of $14,620.32 for taxes collected and that the county owed him, by way of counterclaim, the three items above mentioned, totalling $14,421.18, and thereupon entered judgment for the difference of $119.14 in favor of the county.

The material facts and figures were stipulated between the parties and for the purposes of this opinion only certain parts thereof need be reproduced. It was admitted

that part of the total sum withheld by Frick out of 1934 tax collections included $2755.27 collected on account of levies previously made by several townships in the county. It was also stipulated that during the year 1934, Frick received $199, in cash, collected as county clerk's fees in tax sales, and that in 1934 he also collected the sum of $1985, in cash, representing "back taxes" levied for the fiscal years prior to September 1, 1933, which he had likewise refused to turn over to the county treasurer. It was further stipulated that during the year 1934, Frick, as county collector, had collected the sum of $17,886.57, in cash, which represented two per cent of the total amount of taxes collected, commonly called earned fees of the office of collector, which sum of $17,886.57 he had paid out to divers employees lawfully employed in the office of sheriff and *ex-officio* collector of taxes of Williamson county. This last mentioned stipulation made it unnecessary for Frick to prove the employment and payments challenged, removed any further contention as to the propriety of his deduction of the sum mentioned as earned fees of his office as *ex-officio* collector, and left only the propriety of the deduction made by the trial court of the three respective sums of $5367.03, $224.45 and $8829.70, for our consideration.

The sum of $5367.03 claimed by Frick for deputy sheriff's salaries, fees and expenses in excess of all other fees collected by him during 1934, was improperly allowed. Section 10 of article 10 of the constitution of 1870 provides: "The county board, except as provided in section 9 of this article, shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel and other expenses, and in all cases where fees are provided for, said compensation shall be paid only out of, and shall in no instance exceed, the fees actually collected." To enforce this constitutional mandate the county board is required to fix the whole compensation of county officers, including clerk hire, stationery, fuel and

other expenses before the officer enters upon the duties of his office. This can be done either by fixing the compensation of the officer, including necessary clerk hire, stationery, fuel and other expenses, in one lump sum, or by fixing one sum for compensation of the officer and a separate sum for clerk hire and expenses. If the county board fixes the compensation of the county officer including necessary clerk hire, stationery, fuel and other expenses, in one lump sum, neither the compensation, nor the expenses of the office, can be increased during the officer's term of office. In such circumstances, the officer is entitled to retain the amount fixed, if that much is paid into his office in fees. On the other hand, if one sum is fixed by the board for compensation and another sum for necessary clerk hire and expenses, the officer is entitled to the whole compensation fixed for him, but is entitled only to so much of the amount fixed for expenses as will reimburse him for money actually paid for the reasonable and necessary expenses of his office. (*Coles County* v. *Messer,* 195 Ill. 540, and cases there cited; *Peabody* v. *Forest Preserve District,* 320 id. 454.) County officers have no power to create a liability against the county for office expenses except within some limit already fixed by the county board, and while expense allowance for an office may be changed from time to time as circumstances may require, there is no liability unless an allowance has previously been made. (*Coles County* v. *Messer, supra; Whittemore* v. *People,* 227 Ill. 453; *People* v. *Fuller,* 238 id. 116.) Here the burden of proof rested upon Frick to show what action, if any, had been taken by the county board, and the record and stipulations fail to inform us. Without such a showing it was error to allow the item in question.

It was likewise error for the court to allow the sum of $224.45, accepted by Frick as part payment of taxes due from the Illinois Commercial Telephone Company and represented by county orders issued to the company. It does

not appear that these telephone company orders were countersigned by the order of the county board and there was no stipulation that they were lawfully made and issued. In the absence of such showing they would be invalid. (*County of Coles* v. *Goehring,* 209 Ill. 142; *People* v. *Kramer,* 352 id. 304.) We are not called upon to decide, and are expressing no opinion, on the propriety of the acceptance of such county orders offered in payment of taxes, if properly issued and countersigned by order of the county board.

Frick occupied the dual position of sheriff and *ex-officio* county collector from 1930 to 1934. He was elected sheriff and became *ex-officio* collector by virtue of the statute. During this period, as the lawful custodian of the jail, it was his official duty to properly house, guard and feed the prisoners. He prepared and furnished necessary food to the prisoners and caused bills to be made out and presented to the county board. These bills were regularly audited and ordered paid by the county board. It was stipulated that the total sum of $8829.70 was due him on county orders issued from time to time by the county board for keeping prisoners and that the county orders were all in due form and regularly issued. His argument is that it was his bounden duty to feed the prisoners and likewise the obligation of the county to repay him the amounts expended; that his bills were audited and allowed for these expenditures by the county board but that the county became in default in failing and refusing to pay its warrants issued to him for that purpose. He says the county has no legal defense against his counterclaim and none is sought to be made except to say that no counterclaim will lie against money received by him as tax collections and that he should pursue an independent remedy against the county to recover his debt. His answer to this is that even if his claim were reduced to judgment, no execution could issue against the county thereon and no levy could be made to collect the same and that, even so, the financial condition of Williamson county

at the present time, and for several years past, has been such that no money judgment could be collected.

The nature of this suit and the relationship of the parties must be constantly borne in mind to arrive at a correct conclusion. As before stated, this was an action in debt brought by the county of Williamson against Frick, as principal, and the Massachusetts Bonding and Insurance Company, as surety, jointly and severally, on an official bond. The Civil Practice act now provides that, "subject to rules, any demand by one or more defendants against one or more plaintiffs or against one or more co-defendants, whether in the nature of set-off, recoupment, cross-bill in equity, or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross-demand in any action, and when so pleaded shall be called a counterclaim," etc. (Smith-Hurd Stat. 1935, chap. 110, par. 162.) The legislature made it clear by provision therein that the Civil Practice act was to receive a liberal construction. Statutes tending to effect objects of great public utility are to receive liberal and benign interpretation. (*County of Coles* v. *Goehring, supra.*) As a logical forerunner of the above quoted provision in the Civil Practice act, there had been, for many years, a growing tendency, both in legislation and court decisions, to permit a settlement in one action of as many controversies among the parties as possible, without injury to the rights of others. While formerly the great weight of authority in most jurisdictions was against set-offs or counterclaims of the character in question, our Civil Practice act now grants the right of counterclaim to one or more defendants and against one or more plaintiffs, not only from mutual accounts existing between them, but in tort as well as contract, and for unliquidated damages as well as for liquidated accounts. Our court has not had occasion to sustain this principle in any recent case, but the Appellate Court, to which questions of practice and procedure pri-

marily go, has repeatedly held that where the defendant could bring an independent action at law against the plaintiff, he may likewise assert a counterclaim in any suit brought by the plaintiff against him. *Albrecht* v. *Dillon,* 224 Ill. App. 421; *Streeter* v. *Junker,* 230 id. 366; *Pitts* v. *Ross,* 238 id. 516; *Heiple* v. *Lehman,* 272 id. 513.

In this case no one can question the right of Frick to maintain an independent action in debt against the county to secure payment of the various county orders lawfully issued to him in the amount of $8829.70 for feeding the county prisoners and any reasonable construction of the Civil Practice act would permit Frick to assert his cross-demand here. The ends of public justice would not be served but would be rudely violated, if, in a suit by the county against him in debt, Frick were not allowed to recover the county's debt admittedly due him for feeding the county prisoners during his four-year term of office.

It is recognized as a general rule, and admitted by appellant here, that a counterclaim is permissible in any case where there is mutuality between the parties to the record. (*City of Springfield* v. *Hickox,* 2 Gilm. 241.) The courts of this State have consistently held that if the subject matter of a set-off or counterclaim is such that the defendant might legally assert such claim in an independent action at law, then such counterclaim becomes proper and should be allowed when properly pleaded by either the principal or surety or both. (*Patterson* v. *Steele,* 36 Ill. 272; *Himrod* v. *Baugh,* 85 id. 435; *Litch* v. *Clinch,* 136 id. 410; *Stern* v. *People,* 102 id. 540.) The trial court properly sustained the validity of the item of Frick's counterclaim, $8829.70, but erred in allowing it to be deducted from the tax-money collected by him because the necessary mutuality between the demands did not exist. (*City of Springfield* v. *Hickox, supra;* 57 Corpus Juris, 444.) The tax-money constituted a trust fund held by Frick for the county; his claim for reimbursement was based upon a personal debt

454

owed him by the county. Section 50 of the Civil Practice act (State Bar Stat. 1935, chap. 110, par. 178) provides that "judgment may be entered in such form as may be required by the nature of the case and by the recovery or relief awarded, and more than one judgment may be rendered in the same cause." The circuit court should have entered separate judgments for plaintiff and defendant pursuant to the provisions of this section.

The judgment of the circuit court of Williamson county is reversed and the cause remanded to that court, with directions to enter separate judgments for plaintiff and defendant, in accordance with this opinion.

*Reversed and remanded, with directions.*