Elizabeth A. Curran, Plaintiff, v. Harris Trust and Savings Bank, Defendant.
Harris Trust and Savings Bank, Counterplaintiff-Appellee, v. Elizabeth A. Curran, Thomas D. Nash, as Administrator of Estate of Helen Carlin, Deceased, Louise McGough and Margaret Mahan, Counterdefendants. Appeal of Thomas D. Nash, Administrator of Estate of Helen Carlin, Deceased, Appellant.

Gen. No. 45,826.

211

Opinion filed November 14, 1952. Released for publication November 25, 1952.

CLARK & FISHER, of Chicago, for appellant; WILLIAM E. MORAN, of Chicago, of counsel.

CHAPMAN & CUTLER, of Chicago, for appellee; ROSCOE C. NASH, and SPENCER LE ROY, JR., both of Chicago, of counsel.

MR. PRESIDING JUSTICE ROBSON delivered the opinion of the court.

This is an interlocutory appeal from an order of the trial court entered March 12, 1952, which denied a motion by Thomas D. Nash, administrator of the estate of Helen Carlin, deceased, counterdefendant herein (hereinafter called counterdefendant Nash), to strike the amended and supplemental counterclaim for interpleader and injunction filed by the Harris Trust & Savings Bank, counterplaintiff, to dismiss counterdefendant Nash, as administrator to the cause, and to dissolve a temporary injunction restraining said counterdefendant, from prosecuting a certain cause of action entitled, "Thomas D. Nash, administrator with the Will annexed of the Estate of Helen Carlin, de-

212

ceased, vs. The Northern Trust Company, an Illinois corporation, Municipal Court Case No. 52 M 1362.''

We are confronted at the outset with a procedural question. Section 78 of the Civil Practice Act, Ill. Rev. Stat. 1951, ch. 110, par. 202 [Jones Ill. Stats. Ann. 104.078], provides as follows:

''Whenever an interlocutory order or decree is entered granting an injunction or overruling a motion to dissolve the same, or enlarging the scope of an injunction order, * * * an appeal may be taken therefrom to the Appellate Court.''

Counterplaintiff maintains that it is not intended by this section to provide for a review of the propriety of the rulings of the trial court on motions in the nature of a demurrer but that the only purpose of that section is to permit a review of the record or pleadings to the extent necessary to determine the sufficiency thereof to sustain the interlocutory order under review.

██ ██ This section has been interpreted by our courts to permit the party appealing from the interlocutory order to ask this court to determine not only whether the trial court had the discretionary right to issue the temporary injunction but also to consider whether or not the complaint upon which the temporary injunction was issued was proper and sufficient to sustain such injunction. *Biehn v. Tess,* 340 Ill. App. 140; *Peterson v. Grisell,* 330 Ill. App. 587. We are of the opinion that on this appeal counterdefendant Nash may argue that the counterclaim does not entitle the counterplaintiff to the relief sought in equity. In considering the counterclaim we must accept as true the facts well pleaded but not conclusions of law or conclusions of fact unsupported by allegation of specific facts upon which such conclusions rest. Only propositions of law are presented by this appeal.

In view of this conclusion there are then two points that we must consider. The first point, which is one

of first impression in Illinois, is whether the Civil Practice Act permits new parties to be brought in as counterdefendants to a counterclaim where a complete determination of the controversy cannot be had without their presence. Counterdefendant Nash contends that the right, if any, to make him a counterdefendant is governed by section 38 of the Illinois Civil Practice Act, Smith-Hurd Ann. St., ch. 110, par. 162 [Jones Ill. Stats. Ann. 104.038], the pertinent part of which is as follows:

"1. Subject to rules, any demand by one or more defendants against one or more plaintiffs, or against one or more co-defendants, whether in the nature of set-off, recoupment, cross bill in equity or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross demand in any action and when so pleaded shall be called a counterclaim."

He contends that as he was not a party, plaintiff or defendant to the original complaint, he could not be joined as a counterdefendant to the amended and supplemental counterclaim.

If a strict literal interpretation of this section of the statute alone is taken there might be some substance to this contention. However, the courts of this state have on numerous occasions stated that the Civil Practice Act must be liberally construed so that controversies may be speedily and finally determined according to the substantive rights of the parties. *People v. Frick,* 367 Ill. 446; *People v. Village of Wilmette,* 294 Ill. App. 362; *Weigend v. Hulsh,* 315 Ill. App. 116; *Harris v. Sovereign Camp of Woodmen, Inc.,* 302 Ill. App. 310.

It is a fundamental principle of statutory construction that a statute is passed as a whole and not in parts or sections and is animated by one general

214

purpose and intent. Each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. *People v. West Side Trust & Savings Bank,* 362 Ill. 607; *People v. Olympic Hotel Bldg. Corp.,* 405 Ill. 440; *Trapp v. Gordon,* 366 Ill. 102.

██ Section 25 of the Illinois Civil Practice Act [1951 Ill. Rev. Stats., ch. 110, par. 149; Jones Ill. Stats. Ann. 104.025], which provides as follows,

"(Bringing in new parties.) Where a complete determination of the controversy cannot be had without the presence of other parties, the court may direct them to be brought in. Where a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party. A new party shall be brought in by the service of a summons, which shall be drawn in the usual form with the addition of the statement, preceding the *teste* thereof, that this summons is issued pursuant to an order of the said court made on a date named."
superseded section 34 of the Chancery Act of 1872 which provided that a cross bill might bring in new parties. *Hurd v. Case,* 32 Ill. 45; *Jones v. Smith,* 14 Ill. 229; *Worthy v. Day,* 143 Ill. App. 274. Section 25 was designed to preserve in full the chancery practice as it existed. 28 Ill. Law Review, 868 and 869.

██ Applying the rule of statutory construction to sections 25 and 38 of the Practice Act and construing them together, it cannot be doubted that these sections were designed to continue the previous chancery practice with respect to parties to cross bills as it existed from 1852 to the date of the adoption of the Practice Act. It is not contended by counterdefendant Nash that plaintiff Elizabeth Curran was not properly made a party to the counterclaim. Certainly then after considering the principles heretofore discussed, it would be a travesty on justice to say that the Practice Act places the administration of justice in a legal straight

jacket and prohibits the court from a complete determination of the controversy because counterdefendants Nash, McGough and Mahan were not parties to the original proceeding.

■ Counterdefendant Nash cites *Countiss v. Whiting,* 306 Ill. App. 548, *Chicago Title & Trust Co. v. Wolchinovesky,* 326 Ill. App. 194, and *Aaron v. Dausch,* 313 Ill. App. 524, as holding that counterplaintiff had no right to join counterdefendant Nash as a party to the complaint. In each instance none of the counterdefendants were parties to the original action. In the case before us Elizabeth A. Curran, the plaintiff and party to the original action, is one of the counterdefendants. There are other points of distinction but in our opinion this one point is sufficient to take this case out of those cited by counterdefendant.

■ The second point is whether the amended and supplemental counterclaim for interpleader is sufficient to support the temporary injunction entered by the trial court. The leading case of *Platte Valley Bank v. National Bank,* 155 Ill. 250, states the requirements for interpleader. In that case the Supreme Court said at page 257:

"It is laid down in 3 Pomeroy's Equity Jurisprudence, section 1322, that the equitable remedy of interpleader depends upon and requires the existence of the four following elements: 'First, the same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded; second, all their adverse titles or claims must be dependent on or be derived from a common source; third, the person asking the relief—the plaintiff—must not have or claim any interest in the subject matter; fourth, he must have incurred no independent liability to either of the claimants,—that is, he must stand perfectly indifferent between them, in the position, merely, of a stakeholder.' * * *"

The only contention raised by counterdefendant Nash pertains to the first element required for interpleader. To analyze this we must make a brief summary of the facts most pertinent to the point.

It is alleged that on July 23, 1951, at 9 :00 a. m. Helen Carlin, hereinafter called Carlin, had assets represented by, first, a deposit liability of the counterplaintiff, Harris Trust & Savings Bank, to Carlin in the sum of $10,256.42, which was paid on a withdrawal order signed by Carlin; second, a cashier's check issued by the Northern Trust Company for the sum of $11,611.73 payable to the order of Carlin and endorsed "Helen Carlin, by Wm. N. Brady, her attorney" and "Elizabeth A. Curran"; and third, a check drawn by Chicago Title & Trust Company on Continental Illinois National Bank & Trust Company of Chicago in the sum of $37.50 and payable to the order of Carlin and endorsed "Helen Carlin" and "Elizabeth A. Curran." The second and third items were endorsed by the counterplaintiff, "All prior endorsements guaranteed" and presented to the respective drawee banks which honored them. These three items were paid on July 23, 1951, by counterplaintiff crediting the total proceeds in the sum of $21,905.65 to an account with it in the name of counterdefendant Curran. Carlin died on July 23, 1951, leaving a last will and testament naming Louise McGough and Margaret Mahan as beneficiaries thereof, and counterdefendant Nash was appointed administrator of her estate by the probate court. On September 17, 1951, counterdefendant Nash by his attorney advised the counterplaintiff by letter as follows:

"On September 12, 1951, in the Probate Court of Cook County, Illinois, Case No. 51 P 7981, Docket 511, Page 640, Thomas D. Nash, Public Administrator of Cook County, Illinois, was appointed administrator

217

for the Estate of Helen Carlin, deceased. The undersigned is attorney for Mr. Nash as such administrator.

"On July 23, 1951, there was deposited in your bank to the credit of Elizabeth A. Curran the sum of $21,868.15, which sum we claim to be properly an asset of the Estate of Helen Carlin, deceased. We have made demand upon Elizabeth A. Curran to surrender this sum to the administrator of the Estate of Helen Carlin, and you are hereby notified that if said sum is not turned over to Mr. Nash as directed we shall institute proceedings for the recovery of this sum.

"You are, therefore, notified that any payments made from this account other than to the administrator for the Estate of Helen Carlin are made at your own risk."

Counterplaintiff, relying upon the claim to the sum of $21,905.65 as evidenced by counterdefendant Nash's letter, filed its original counterclaim and its amended and supplemental counterclaim, and as a consequence became liable for attorneys' fees and expenses in connection with this action. Counterdefendant Curran also claimed said sum of $21,905.65 as evidenced by her complaint in this cause, and Louise McGough and Margaret Mahan made claims as beneficiaries under the last will and testament of Helen Carlin, deceased.

On February 11, 1952, counterdefendant Nash as administrator commenced an action in the Municipal Court of Chicago against The Northern Trust Company to recover the sum of $11,611.73 on the ground that said cashier's check in that amount issued by said bank and payable to the order of Carlin was not endorsed by her or by Wm. N. Brady with her authority, and neither she nor counterdefendant Nash ever received the proceeds of the check. The Northern Trust Company tendered the defense of said action to the counterplaintiff and the counterplaintiff accepted the defense thereof.

Applying the facts as heretofore stated, do each of the counterdefendants claim the same thing, debt or duty? It is clear that counterdefendants Curran and Nash, as administrator, lay claim to the sum of $21,-905.65—Curran by her complaint against the counterplaintiff and Nash, as administrator, by the letter of July 23, 1951, addressed to the counterplaintiff. Each claims the chose in action, the debt, the credit that was given and that arose from depositing the money with the counterplaintiff, and the claim of each is adverse to the other.

██ Counterdefendant Nash asserts that each counterdefendant does not claim the same chose in action but that by filing his suit in the municipal court of Chicago against the Northern Trust Company on its cashier's check for $11,611.73, he has elected to pursue an action ex contractu; therefore, waiving his right of action in tort against the counterplaintiff for this sum. The letter of September 17, 1951, addressed to counterplaintiff by counterdefendant Nash's attorney is capable of only one interpretation—that Nash claimed the sum of $21,905.65 on deposit with counterplaintiff as an asset of the estate of Helen Carlin, deceased, and that if it were not turned over to Nash, counterplaintiff would be sued for such sum. If this court were to take counterdefendant Nash's interpretation, counterplaintiff would be required to defend the action in the Municipal Court and another possible action to collect the difference between the $11,611.73 claimed in the Municipal Court and the amount of its deposit liability in the sum of $21,905.65. In the present action it is compelled to defend the claim of counterdefendant Curran in and to the same sum that counterdefendant Nash claims. Thus counterplaintiff would be required to defend three lawsuits with a possibility of having to pay the liability more than once. It is our opinion that counterdefendant Nash, by his

219

letter of September 17, 1951, elected to pursue an action against counterplaintiff and relying on this demand counterplaintiff filed its counterclaim for interpleader on October 30, 1951. Therefore, counterdefendant Nash is estopped from thereafter asserting his claim in the Municipal Court against The Northern Trust Company which was not filed until February 11, 1952.

Counterdefendant Nash relies strongly upon the case of *Rauch v. Ft. Dearborn National Bank,* 223 Ill. 507. We have read the case and are of the opinion that there is a fundamental difference between it and this case. The difference is that the complaint filed by the Fort Dearborn National Bank for interpleader did not allege that the payees of the checks which had been forged had asserted any claim whatsoever against the bank for the fund in its possession. On the contrary, the only steps taken by the payees of the checks were to institute actions against the drawee banks to recover the amounts paid by them on the forged checks to the Ft. Dearborn National Bank. Here counterdefendants Nash and Curran have each asserted claims to the same thing, debt or duty, namely, the deposit of the counterplaintiff in the sum of $21,905.65.

 Counterdefendant Nash raises no serious contention as to the second, third and fourth elements of interpleader. An examination of the counterclaim clearly indicates that the requirements as set forth in *Platte Valley Bank v. National Bank,* 155 Ill. 250, have been met.

We are of the opinion that the allegations of the amended and supplemental counterclaim were sufficient to support the injunction entered by the trial court.

*Judgment affirmed.*

SCHWARTZ and TUOHY, JJ., concur.