(No. 33184.—

VIRGIL JOHNSON *et al.,* Appellees, *vs.* JAMES V. MOON, Admr., Appellant.

*Opinion filed September 23, 1954.*

562

Ralph F. Himmelhoch, of Chicago, for appellant.

Kirkland, Fleming, Green, Martin & Ellis, and Epton, Scott, McCarthy & Epton, both of Chicago, (John M. O'Connor, Jr., Max E. Wildman, Edward A. Scott, and Thomas D. Allen, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

We have taken this case upon leave to appeal because it presents an important procedural question concerning which there appears to be a conflict in the decisions of the Appellate Courts. The question is whether or not a defendant may bring in new parties, in addition to the original plaintiff, as cross-defendants to a counterclaim.

The litigation which presents the question relates to a collision which occurred on July 8, 1950, between a car owned and driven by James George Moon, and a tractor-trailer, the ownership and operation of which is disputed upon the pleadings. Alleging that he was "the owner and occupant and driver" of the tractor-trailer, Virgil Johnson filed a complaint on September 18, 1950, against James V. Moon, administrator of the estate of James George Moon,

by which he sought to recover for the damage to the tractor-trailer which resulted from the collision.

On February 16, 1951, the attorney for the administrator appeared before Judge John A. Sbarbaro and represented that one Philip K. Saxton had testified at a coroner's inquest that he was the driver of the tractor-trailer at the time of the accident, that Virgil Johnson was his immediate employer, and that the load being hauled in the trailer had been picked up in Iowa from a customer of Safeway Truck Lines, Inc. for transportation to the east coast. The attorney further represented that the Illinois license plates carried on both the tractor and the trailer at the time of the accident had been applied for by, and issued to, Safeway Truck Lines, Inc., and that the title records of the Secretary of State of Illinois disclose that Virgil Johnson and Kenneth Johnson were the owners of one unit of said equipment. Upon these representations, and upon the motion of the attorney for the administrator, Judge Sbarbaro entered an order which directed that Safeway Truck Lines, Inc., Philip K. Saxton and Kenneth Johnson be brought in as additional parties by the service of summons, and granted the administrator leave to file a counterclaim against the plaintiff and the added parties.

The counterclaim filed by the administrator pursuant to this order made the original plaintiff and the added parties cross-defendants. It alleged that the tractor-trailer was owned and operated by Safeway Truck Lines, Inc., Kenneth Johnson and Virgil Johnson, "or one or some of them," and that cross-defendant Philip K. Saxton was driving the tractor-trailer, as the employee "of one, some or all of the other defendants" and was acting within the scope of his employment. It also alleged that James George Moon was fatally injured in the collision, due to the negligence of the defendants, and sought recovery under the Wrongful Death Act (Ill. Rev. Stat. 1953, chap. 70,) and for damage to the decedent's automobile.

On April 2, 1951, Safeway Truck Lines, Inc., filed an answer denying the allegations of the counterclaim, and demanded a trial by jury. Process was served upon Saxton and Kenneth Johnson as nonresident operators under section 20a of the Motor Vehicle Law. (Ill. Rev. Stat. 1953, chap. 95½, par. 23.) Apparently neither Saxton nor Kenneth Johnson ever filed an appearance.

More than a year later, on May 9, 1952, the attorneys for Safeway Truck Lines, Inc., moved for leave to withdraw its answer to the counterclaim and moved that the counterclaim be dismissed as to Safeway Truck Lines, Inc., Philip K. Saxton and Kenneth Johnson. This motion came on for hearing before Judge Harold G. Ward, who entered an order allowing the motion, dismissing the counterclaim as to the added defendants and entering judgment for costs against the administrator. The administrator appealed to the Appellate Court which affirmed the judgment dismissing the counterclaim. (1 Ill. App. 2d 6.) We granted leave to appeal.

At the outset the administrator contends that Judge Ward lacked authority to review the order entered by Judge Sbarbaro directing that the added counterdefendants be brought into the case and permitting the filing of the counterclaim. In our opinion, however, this contention was properly rejected by the Appellate Court upon the authority of *Roach v. Village of Winnetka,* 366 Ill. 578, 581. See 1 Ill. App. 2d 6, 8, 9.

The principal question has not heretofore been before this court. In several opinions of the Appellate Court it has been suggested or stated that counterclaims which require for their determination the presence of additional parties were improper, but in each of these cases the decision was rested upon other grounds as well. See *McKerchar v. Ayres,* 300 Ill. App. 518 (no effort was made to bring in additional party, which was given no notice of counterclaim against it) ; *Countiss v. Whiting,* 306 Ill. App. 548

(counterclaim asserted only a "possible future contingent liability"); *Aaron* v. *Dausch*, 313 Ill. App. 524 (counterclaim insufficient because it stated only conclusions); *Chicago Title and Trust Co.* v. *Wolchinovesky*, 326 Ill. App. 194 (court had lost jurisdiction by entry of decree before counterclaim was filed.) In *Curran* v. *Harris Trust & Savings Bank*, 348 Ill. App. 210, however, it was held that sections 25 and 38 of the Civil Practice Act authorized the bringing in of additional parties as cross-defendants to a counterclaim in the nature of interpleader.

Section 38 of the Civil Practice Act provides that "(1) Subject to rules, any demand by one or more defendants against one or more plaintiffs, or against one or more co-defendants, whether in the nature of set-off, recoupment, cross-bill in equity or otherwise, * * * may be pleaded as a cross-demand in any action, and when so pleaded shall be called a counterclaim." (Ill. Rev. Stat. 1953, chap. 110, par. 162.) Section 25 of the act provides, "Where a complete determination of the controversy cannot be had without the presence of other parties, the court may direct them to be brought in. Where a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party." Ill. Rev. Stat. 1953, chap. 110, par. 149.

The appellees contend first that section 38 alone governs the right to file a counterclaim and that section 25 has no application, and that the specification of "plaintiffs" and "defendants" indicates an intention to restrict a counterclaim to those who have already been made parties to the action by the complaint. They also contend that even if section 25 has a bearing on section 38, it is not controlling here since the "controversy" between defendant and the original plaintiff may be determined without the presence of the other parties sought to be brought in.

Even if we assume that the language of section 38 limits counterclaims to original parties to the action, we cannot

accept the view that it should be construed as an isolated text. No reason is advanced to support such a departure in this case from the established course, which contemplates that "the several provisions of the statute should be construed together in the light of the general purpose and object of the act, so as to give effect to the main intent and purpose of the legislature as therein expressed." (*People ex rel. Nelson* v. *Olympic Hotel Building Corp.* 405 Ill. 440, 444.) This is the method which has hitherto been used in construing the Civil Practice Act. See *Trapp* v. *Gordon,* 366 Ill. 102, 108-109.

The provisions of the Civil Practice Act concerning joinder of parties, of causes of action, and counterclaims, effected substantial changes in the procedure theretofore existing. Prior to that act, the dimensions of the unit which was susceptible of litigation in a single action at law were governed, in the main, by the scope of the common-law forms of action. While the common-law rules as to joinder of causes of action had been somewhat modified by statute, it remained generally true that as between a single plaintiff and a single defendant, only those causes of action might be joined in one law suit which fell within the scope of a single one of the common-law forms of action. So far as joinder of parties was concerned, ordinarily in actions at law only those who had a joint right could be joined as plaintiffs, and only those against whom a joint liability was asserted could be joined as defendants. A defendant in an action at law could advance claims against the plaintiff only by way of recoupment or setoff.

In equity different views had prevailed. There the scope of the controversy had traditionally been, determined by considerations of trial convenience and the desirability of avoiding a multiplicity of actions. Whether or not a bill was multifarious depended primarily upon whether or not the defendant would be prejudiced by the joinder of unrelated matters. Those persons were required to be made

parties whose interests would be directly affected by the decree, and those persons were allowed to be made parties who were interested in the subject matter of the suit, or in the relief demanded. A defendant could secure affirmative relief by way of cross bill as to any matters arising out of, or germane to, the subject matter of the original suit.

The Civil Practice Act establishes quite different standards to govern the joinder of parties and of causes of action whether at law or in equity. As between a single plaintiff and a single defendant, it permits the joinder of causes of action without limitation, subject only to the formal requirement that separate causes of action be separately stated. (Secs. 43, 44; Ill. Rev. Stat. 1953, chap. 110, pars. 167, 168.) Joinder of multiple plaintiffs and of multiple defendants now depends broadly upon the assertion of a right to relief, or a liability, arising out of the same transaction or series of transactions and the existence of a common question of law or fact. (Secs. 23, 24; Ill. Rev. Stat. 1953, chap. 110, pars. 147, 148.) New parties may be brought in when their presence is necessary for a complete determination of the controversy or where they have an interest or title which the judgment may affect. (Sec. 25; Ill. Rev. Stat. 1953, chap. 110, par. 149.) At any time before judgment, amendments may be allowed, introducing any party who ought to have been joined in order to enable the plaintiff to sustain his claim "or the defendant to make a defense or assert a cross-demand." (Sec. 46; Ill. Rev. Stat. 1953, chap. 110, par. 170.) Any demands whatsoever of a defendant against a plaintiff may now be made the subject of a counterclaim regardless of their relation to the claim asserted by the plaintiff. (Secs. 43, 44; Ill. Rev. Stat. 1953, chap. 110, pars. 167, 168.) Provision is made for consolidation and severance of issues, and for the entry of more than one judgment in the same case. Secs. 23; 44, 50, 51; Ill. Rev. Stat. 1953, chap. 110, pars. 147, 168, 174, 175.

These provisions show a deliberate purpose to relax the common-law limitations upon the scope of an action and to broaden the rules as to those who may be joined as parties. In many respects, the equitable standard of administrative convenience is substituted for the restrictive rules of the common law; in other instances, notably in the unrestricted permission to assert claims and cross demands between a single plaintiff and a single defendant, the statute expands the scope of an action beyond the former equitable limits. The power of the trial court to sever and to consolidate is relied upon to achieve orderly administration in the case of unlimited joinder of claims where a single plaintiff and a single defendant are involved. An additional safeguard which accompanies the broad joinder of multiple parties which the act permits is the requirement that the matters to be litigated arise from the same "transaction or series of transactions" and involve a common question of law or fact.

In the light of these considerations, we think that the introduction of new parties as cross-defendants is authorized by the statute. Section 38 provides for the filing of counterclaims whether in the nature of "cross-bill in equity or otherwise." The addition of new parties as defendants to a cross bill in equity was familiar practice in Illinois prior to the enactment of the Civil Practice Act. (See, e.g., *Jones* v. *Smith,* 14 Ill. 229; *Scott* v. *Milliken,* 60 Ill. 108; *Hutson* v. *Wood,* 263 Ill. 376.) There is no suggestion of a purpose to eliminate that practice. And the introduction of new parties is also implied by the clear provision in section 46 for the introduction of new parties by amendment when necessary to enable the defendant to sustain his cross demand. It could hardly have been intended that the power of joinder permitted by amendment to a counterclaim should be broader than that permitted initially.

The appellees suggest that those provisions of the act which permit the introduction of new parties are applicable

only to suits in equity, and it is upon this ground that the *Curran case* is explained. But the purpose of the act was to make applicable to law actions the broader provisions which had theretofore prevailed in equity. The provisions of the act concerning parties "are merely a restatement, in simple language, of the practice with which the lawyers of Illinois have always been familiar in dealing with equity cases * * *. All that the new Civil Practice Act has done is to phrase the equity practice in the form of those simple rules and apply it to law and equity alike." Sunderland, Observations on the Illinois Civil Practice Act, 28 Ill. L. R. 868, 869; *cf.* McCaskill, Illinois Civil Practice Act Annotated (1936 Supp.) pp. 44, 48-51.

The applicability of section 25 to the present problem was long since pointed out, and a form drafted for use in adding new parties as cross-defendants to a counterclaim. (McCaskill, Illinois Civil Practice Act Annotated, (1936 Supp.), pp. 57-60, 89-90.) After analyzing the provisions of the act relating to joinder of parties and of causes of action, the author continues: "The result which seems to follow from a consideration of all these sections is that so long as the counterclaims are directed against original parties to the suit it is not necessary that they be germane to the matters in the complaint, but if additional parties are brought in, the subject matter of the counterclaims must arise out of the same transaction, or series of transactions, as that set out in the complaint, and the new defendants must have an interest in that controversy. 'Controversy' is a flexible term. As between original parties it takes in the complaint and unrelated counterclaims. When dealing with new parties it is restricted to the matters in the complaint, or matters closely related thereto, where common questions will be involved." *Id.* at 59.

We agree with this interpretation. Appellees' argument to the contrary assumes the question in issue by defining "controversy" to refer only to the claim asserted by the

570

original plaintiff against the original defendant. That construction is too narrow. It is sufficient that the "controversy," delimited by the complaint and the counterclaim, here relates to a single occurrence, and presents common questions of law and fact. If the cause of action asserted in the counterclaim had been advanced by a complaint in an independent action, proper judicial administration would require that the two cases be consolidated for trial.

The judgments of the Appellate Court and of the superior court of Cook County are each reversed, and the cause is remanded to the superior court of Cook County, with directions to proceed in accordance with this opinion.

*Reversed and remanded, with directions.*