MARTIN L. GECHT *et al.*, Plaintiff and Counter Defendants-Appellees, *v.* MORRIS SUSON *et al.*, Defendants and Counter Plaintiffs-Appellants.

(No. 54719;

First District—December 17, 1971.

184

L. Louis Karton, of Chicago, for appellants.

Richard F. Levy, and Earl B. Slavitt, both of Chicago, (Levy and Erens, of counsel,) for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This is an appeal from a summary judgment for plaintiffs entered in a confession of judgment proceeding. The pleadings, exhibits, affidavits and discovery depositions disclose the following facts.

Morris Suson, hereinafter referred to as defendant,[1] had an option to purchase certain real estate from Irving Dexter and Armin Miller for $2,025,000. Defendant paid $175,000 and a balance of $1,850,000 was due on June 1, 1967. Defendant allegedly spent large sums in having the property rezoned and in an attempt to obtain the amount due on June 1, defendant sought financing from Amalgamated Trust and Savings Bank (AT&S). Martin Gecht and Eugene Heytow, hereinafter referred to as plaintiffs, were respectively, chairman and vice-chairman of the AT&S board of directors and principal AT&S stockholders. Plaintiffs entered negotiations with defendant toward effecting an agreement providing that defendant would obtain an extension of the date of closing of the option until June 30, 1967, and plaintiffs would individually purchase the subject property with an option in defendant to purchase it from them by June 1,

---

[1] Sharon Suson was a co-maker of the note and was named as a party defendant in this suit. She was not a participant in the negotiations preceding execution of the note.

1969. Defendant obtained the extension from Dexter and Miller at a cost of $38,500.

On June 29, 1967, however, plaintiffs informed defendant that, notwithstanding the earlier negotiations, they would pay the balance due on the property ($1,850,000) and sell it to defendant for $2,232,854.16 on installments. Defendant objected that this was not the plan for which he had negotiated. Defendant noted that he had invested substantial amounts of money and time in gaining a rezoning of the subject land which made it worth approximately $4,000,000. In order to protect his investment defendant acceded to the plan and after assurances that they had the necessary $1,850,000 and would exercise the option he assigned the option to purchase to plaintiffs' nominee and executed an installment contract of purchase (hereinafter referred to as the "Real Estate Sales Contract").

Two further extensions of time were granted by Dexter and Miller and the transaction was set to be closed July 7, 1967. At the closing, a disagreement between plaintiffs and Dexter and Miller as to the method of payment, proration of taxes, payment of escrow expenses and other items culminated in the refusal of Dexter and Miller to transfer title. Plaintiffs, shortly thereafter, filed suit for specific performance against Dexter and Miller. Defendant subsequently commenced negotiations with Dexter and Miller for a new two year option, but they allegedly informed him that they would not negotiate any further option with him if they were forced to defend plaintiffs' suit for specific performance. On August 31, 1967, plaintiffs' suit for specific performance. On August 31, 1967, plaintiffs and Dexter and Miller entered into an agreement, "Dexter-Miller Agreement," wherein they agreed that on September 8, 1967, plaintiffs would either exercise their option to purchase the property or relinquish all rights thereto and dismiss the pending specific performance lawsuit. On September 7, 1967, after negotiations initiated by defendant, a settlement agreement was executed by defendant and plaintiffs whereby, in consideration of a payment of $150,000 to plaintiffs by defendant, plaintiffs agreed to give up all rights which they had to exercise the option to purchase the real property from Dexter and Miller and the Real Estate Sales Contract of June 30, 1967, was cancelled. Defendant alleges that in order to obtain a new option from Dexter and Miller he was compelled to negotiate this settlement so that he could salvage his already large investment in the property. Defendant paid plaintiffs $50,000 upon execution of the agreement and together with his wife, Sharon Suson, signed a one year note for $100,000 and agreed to provide security for the note within ten days. Defendant defaulted on the note and on September 17, 1968, judgment was confessed by him and his wife under the purported authority of the note's confession of judgment clause, through an attorney from plaintiffs'

attorney's firm. Upon motion, this judgment was opened and defendant's Counterclaim and Motion to Vacate were permitted to stand as the answer. Summary judgment was subsequently entered in favor of plaintiffs in the sum of $112,458.72, being principal in the amount of $100,000, $7,025 in interest, and $5,433.75 in attorney's fees, and covered all matters in dispute under the pleadings, including defendant's counterclaim.

On appeal defendant contends: (1) the trial court erred in granting a summary judgment because in their counterclaim defendants had made allegations of economic duress, brought upon them by plaintiffs, which presented a genuine issue of material fact; (2) the trial court erred in denying defendant the opportunity to file additional affidavits subsequent to its ruling on the motion for summary judgment; (3) the confession of judgment by a member of plaintiffs' attorney's law firm acting for defendant invalidates the judgment; (4) the judgment is tainted by criminal usury.

Additional facts will be referred to later in the opinion.

*Opinion*

■■ On August 31, 1967, plaintiffs entered into the Dexter-Miller Agreement, which enabled them to exercise the option to purchase the property by September 8, 1967. During this period plaintiffs were obligated to deliver the property to Suson by the Real Estate Sales Contract of June 30. Rather than waiting for plaintiffs to exercise their option, defendant initiated negotiations with plaintiffs which resulted in the execution of the settlement agreement of which the confession note in question formed an important part. Defendant now claims that this agreement is void because he executed it under the economic coercion of plaintiffs.

When defendant entered the settlement agreement with plaintiffs, plaintiffs were legally obligated to deliver the property to him under the Real Estate Sales Contract. If they exercised their option of September 8, defendant could have enforced his rights to the land. If they failed to exercise the option defendant could have had a claim for damages against plaintiffs. Instead of waiting for plaintiffs to act, Suson *chose* to enter the settlement agreement of September 7. According to Arthur Brantman, defendant's attorney, defendant told him in the latter part of August that he would go to see Gecht, one of the plaintiffs. At that time defendant stated: "I have to explain what my position is, where I'm at, and maybe they'll agree to take some money and forget the whole thing." Our conclusion is that defendants are bound by the settlement agreement they entered into.

Additionally, under the settlement agreement plaintiffs relinquished their rights under the option to purchase for $2,025,000 and cancelled the

Real Estate Sales Contract with defendant, the purchase price thereunder being $2,232,854. The agreement stated:

"The parties have agreed to terminate that. Contract on the terms and conditions herein set forth:

1. In consideration of the agreements by Owner, Purchasers do hereby agree to pay to Owner the sum of One Hundred Fifty Thousand Dollars ($150,000.00) as follows:

(a) Ten Thousand Dollars ($10,000.00) by check delivered concurrently herewith.

(b) Forty Thousand Dollars ($40,000.00) by separate check delivered concurrently herewith.

(c) One Hundred Thousand Dollars ($100,000.00) by Promissory Note due in one (1) year in the form attached hereto, which Note is secured as hereinafter described."

In *Joyce v. Year Investment, Inc.* (1964), 45 Ill.App.2d 310, 314 the court said:

"The legal conception of economic or compulsory duress is in forcing a person to act against his own will. It does not exist when the person upon whom it has been so charged had an option or choice as to whether he will do the thing or perform the act said to have been done under duress."

We also think it significant that subsequent to the execution of the settlement agreement that defendants, in accord with obligations specified by the agreement, voluntarily supplied the required security. This act must properly be construed as a ratification of the settlement agreement regardless of its original allegedly coercive nature. (See *Prontzinski v. Baker* (1936), 364 Ill. 451.) We find that no genuine issue of material fact was presented and the court properly entered a summary judgment for plaintiffs.

■■ We now turn to defendant's contention that the court abused its discretion in refusing to allow defendants to file additional affidavits subsequent to the court's announcement of its ruling on the motion for summary judgment. The record reveals that judgment by confession was entered on September 17, 1968. On September 25, 1968, defendants filed a motion to vacate. On October 22, 1968, the judgment was opened and defendants were given leave to file their counterclaim. Thereafter numerous pleadings and affidavits were filed by the parties and continuances were granted to both defendants and plaintiffs. Finally on October 17, 1969, oral argument was presented and at the conclusion of the hearing an order granting summary judgment for plaintiffs was announced by the court. Subsequently thereto defendants sought to present two wit-

nesses. After denial of this request they moved to vacate the summary judgment order and to file "additional supporting affidavits." On October 31 an order denying leave to file the additional affidavits was entered.

We believe that the record of proceedings demonstrates that defendants were given ample opportunity to prepare and present all affidavits and documents in support of their opposition to plaintiffs' motion. The court did not abuse its discretion in rejecting defendant's affidavits.

■■ Defendants' contention that the confession of judgment by an attorney of the same firm as plaintiffs' counsel invalidates the judgment is without merit. (*Blanck v. Medley* (1896), 63 Ill.App. 211.) Also, because attorney's fees on confessions of judgment are computed by reference to a formula provided by Circuit Court rule and the fees charged in this case are within that limit we cannot agree with defendant that the charge was excessive.

■■ Lastly, defendant cites Ill. Rev. Stat. 1965, ch. 38, par. 39—1[2] in support of his contention that the judgment is tainted by criminal usury since the note provided for interest of 21% per annum and therefore should be set aside. However, this section by its terms applies solely where there has been a loan of money or other property or the forebearance of collection of such a loan. This transaction was a purchase and sale, not a loan. Usury law does not apply to such transactions. *Contract Buyers League v. F & F Investment* (N.D. Ill. 1969), 300 F.Supp. 210 aff'd on other gds. 420 F.2d 1191 (7th Cir., 1970), *cert.* denied, 400 U.S. 821 (1970).

For the reasons stated the judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and DRUCKER, J., concur.

---

[2] Ill. Rev. Stat. 1965, ch. 38, par. 39—1 reads as follows:

Any person commits criminal usury when, in exchange for either a loan of money or other property or forebearance from the collection of such a loan, he knowingly contracts for or receives from an individual, directly or indirectly interest, discount or other consideration at a rate greater than 20% per annum either before or after the maturity of the loan.