ZADIE WELLS, Plaintiff-Appellant, v. GREAT ATLANTIC & PACIFIC TEA COMPANY, Defendant-Appellee.

First District (1st Division) No. 87—0260

Opinion filed June 20, 1988.

Law Offices of Fraterrigo, Best & Beranek, of Chicago (Gary M. Feiereisel, of counsel), for appellant.

Haskell & Perrin, of Chicago (Kevin W. Doherty and Darryl B. Einhorn, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

This appeal stems from an order of the circuit court of Cook County denying plaintiff's motion to vacate the summary judgment entered in favor of the defendant, Great Atlantic and Pacific Tea Company (A&P). Plaintiff contends that the trial court erred in granting defendant's motion for summary judgment and that the court's refusal to vacate that order constitutes an abuse of discretion.

For the reasons which follow, we affirm the decision of the trial court. On February 7, 1982, plaintiff Zadie Wells (Zadie) slipped and fell on a patch of ice in A&P's parking lot. She filed a two-count complaint against A&P and Robert Vasser (Vasser), who had been hired by A&P to remove snow from the parking lot. In her complaint she alleges that the defendants negligently: (1) failed to maintain the parking lot in a safe condition; (2) failed to properly remove ice and snow from the parking lot; (3) created an unsafe condition through the negligent alteration of ice and snow; and (4) failed to warn the public of the unsafe condition.

In 1985 A&P moved for summary judgment. The pleadings and exhibits filed in support of and in opposition to the motion establish the following factual matrix: On February 7, 1982, plaintiff was walking across the A&P parking lot with a friend when she slipped on snow-covered ice and fell. At that time there was approximately two to three inches of snow covering the ice. Plaintiff had lived across the street from the A&P parking lot where she fell for several years. On the date of her accident, there were piles of snow around the perime-

ter of the lot that had been there for five to six weeks as a result of snowplowing operations in the lot.

In her deposition Neddie Lemmons testified that she was walking with the plaintiff through A&P's parking lot when the plaintiff slipped and fell. She said the surface of the lot was spotted with ice and slightly rutted, and in the area where the fall occurred, there were speckles of snow over the ice. There were banks of snow around the edge of the parking lot that were there as a result of plowing done in the lot.

Plaintiff's expert, Charles Baule, stated in his affidavit that he had examined the parking lot in question and that it pitched toward the center of the lot. It was his opinion that if the snow were plowed in banks around the perimeter of the lot, during alternate periods of freezing and thawing the snow would melt and the water runoff could result in flat sheets of ice forming in the area where the plaintiff fell.

The climatological data showed that on January 31, 1982, there was a snowfall of 5.4 inches in the Chicago area and that on February 5, 1982, there was a snowfall of 2.6 inches. There had been 13 days between January 1, 1982, and February 7, 1982, the date of the accident, on which the temperature went above the freezing mark, but the temperature did not rise over 32 degrees between January 31, 1982, and February 7, 1982.

Based on this evidence, the trial court held that the plaintiff failed to establish that the ice in question was an unnatural accumulation and granted summary judgment in favor of A&P. Plaintiff filed a motion for reconsideration supported with an amended affidavit of her expert as well as a motion to file a second amended complaint which contained new allegations of negligence. On rehearing, the trial court refused to consider the amended affidavit and denied both motions.

On appeal plaintiff alleges that summary judgment was improperly granted. First, because a question of fact exists as to whether the ice was an unnatural accumulation caused by the excessive slope of the parking lot combined with the manner in which the snow was plowed, and second, because a question of fact exists as to whether the defendants were negligent in their snow-removal activities.

■ In order to defeat a motion for summary judgment in a slip-and-fall case, the plaintiff must affirmatively show that the accumulation of ice, snow or water is due to an unnatural accumulation and that the property owner had actual or constructive knowledge of the condition. (*Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 557, 467 N.E.2d 947.) When a plaintiff alleges that the design of a sloping surface created an unnatural accumulation of ice, there must

be evidence presented of the dangerous nature of the slope, that the slope was the proximate cause of the plaintiff's injuries and that the landowner had notice of the defect. (*Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 97, 289 N.E.2d 250.) Once such evidence has been produced, the issue of whether the slope was a dangerous condition which created an unnatural accumulation of ice is a question of fact. *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 549, 400 N.E.2d 16.

Plaintiff contends that her evidence of the dangerous nature of the slope of the parking lot raised an issue of fact as to whether the ice upon which she fell was an unnatural accumulation which should have been submitted to the jury. The trial court found, and we agree, that the plaintiff has not presented sufficient evidence of an excessive slope. At the time summary judgment was granted, the only evidence of an allegedly excessive slope was the statement of plaintiff's expert that the surface of the parking lot "pitched downward" from the perimeter towards the center of the lot. There was no factual support for this conclusion, and, based on that statement alone, no question of fact existed as to whether the ice was an unnatural accumulation resulting from the allegedly dangerous nature of the slope.

■ Plaintiff argues that any deficiency in the original affidavit regarding the degree of the slope was remedied in Charles Baule's amended affidavit which contained a survey of the parking lot and specific information regarding the slope of the lot, and that it was an abuse of discretion for the court not to consider the amended affidavit on rehearing. Whether to permit the filing of additional affidavits subsequent to the court's announcement of its ruling on a motion for summary judgment is within the discretion of the trial judge. (*Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 563, 331 N.E.2d 576.) Where the plaintiff was given ample opportunity to prepare and present affidavits and documents in support of her opposition to defendant's motion, the court's refusal to allow the filing of additional affidavits does not constitute an abuse of discretion. (*Gecht v. Suson* (1971), 3 Ill. App. 3d 183, 188, 278 N.E.2d 193.) Plaintiff concedes that the information in the amended affidavit was not new information but merely an "amplification" of the previous affidavit. Based on that fact, we see no reason why the information contained in the amended affidavit could not have been included in the original affidavit, and we find that the court did not abuse its discretion by refusing to consider the amended affidavit on rehearing.

■ Even assuming the amended affidavit had been considered on rehearing, plaintiff nonetheless fails to establish an excessive slope.

The record indicates that from the southeast corner of the parking lot to the southernmost catch basin there is a 4.5-inch drop over a 65.3-foot length, and from the southern entrance of the parking lot to the catch basin there is a 3.5-inch drop over a 44.3-foot length. In *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94, 289 N.E.2d 250, a drop of approximately five inches per 51 inches was held to be insignificant, and in *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359, a drop of two inches per 54 inches was not actionable. In the present case we find that even had the amended affidavit been considered on rehearing, as a matter of law, the drop of approximately .29 inches per 50 inches from the southeast corner of the parking lot to the southernmost catch basin, and the drop of approximately .33 inches per 50 inches from the southern entrance of the parking lot to the catch basin is not excessive.

■ Plaintiff further maintains that a question of fact exists as to whether the manner in which the parking lot was plowed was negligent.[1] She contends that plowing the snow into banks around the perimeter of the lot constitutes negligence because melting snow from the banks created an unnatural accumulation of ice and because the contract between A&P and Robert Vasser called for "snow removal" and the snow was not completely removed from the premises. This allegation raises two issues; first, whether the plowing was performed negligently, and second, whether the plaintiff can rely upon the contract between the defendants to impose liability upon them. As to the first issue, it is the law in Illinois that in the absence of a contractual obligation, there is generally no duty on the part of a property owner to remove accumulations of ice or snow from areas maintained for the use of his customers where the accumulation is a natural one and not caused or aggravated by the property owner. (*Lewis v. W. F. Smith & Co.* (1979), 71 Ill. App. 3d 1032, 1037, 390 N.E.2d 39; *Timmons v. Turshi* (1981), 103 Ill. App. 3d 36, 38, 430 N.E.2d 1135.) However, a voluntary undertaking to remove snow and ice may subject the landowner to liability if the removal is performed negligently. (*Burke v. City of Chicago* (1987), 160 Ill. App. 3d 953, 956, 513 N.E.2d 984.) The mere removal of snow which may leave a natural ice formation remaining on the premises does not of itself constitute negligence (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142,

---

[1] In ruling upon this issue on summary judgment, the trial court questioned whether the allegation in plaintiff's complaint, that the defendants negligently altered the snow and ice, included negligent plowing. Construing the record most liberally in favor of the plaintiff (*McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 550, 400 N.E.2d 16), we will consider "alteration" to include plowing in this case.

145, 430 N.E.2d 1031.) For plaintiff to establish that the snow removal was negligent she must present evidence that the manner in which the snow was piled created an unnatural accumulation of ice and that the landowner had actual or constructive knowledge of the dangerous condition. (*Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318, 173 N.E.2d 534.) While plaintiff need not prove her case at a summary judgment hearing, she must present some facts to show the origin of the ice was unnatural or caused by the defendant. *Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 558, 467 N.E.2d 947.

██ Plaintiff relies on the affidavit of Charles Baule to establish that the ice in question formed as a result of snow melting from the pilings and freezing during alternate periods of frost and thaw and the fact that the snow banks had been present five to six weeks prior to the accident to establish constructive knowledge of the allegedly defective condition on the part of A&P. We do not feel that the evidence supports plaintiff's contentions. The record shows that the last significant snowfalls before the accident occurred on January 31, 1982, and February 5, 1982, and that the snow was cleared from the lot thereafter. The temperature did not rise above 32 degrees between January 31, 1982, and the date of the accident, so that there were no periods of alternate thawing and freezing for a week preceding the accident. Plaintiff's expert testified that ice produced by runoff from the snow banks would form in flat sheets; plaintiff's witness testified that the parking lot was "spotted" with ice. Furthermore, plaintiff cannot rely on the fact that the snow banks had been present for five to six weeks before the accident to establish constructive notice of the dangerous condition on the part of the defendants. Plaintiff must present evidence that the defective condition, in this case the ice, not the snow bank, had been there long enough to charge the responsible party with notice and knowledge of the dangerous condition. (*Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318, 173 N.E.2d 534.) Based on these facts, we feel that plaintiff has not been shown that the ice in question was an unnatural accumulation or that the defendants had knowledge of the condition.

██ As to the second issue, we recognize that in limited circumstances an owner who contractually obligates himself to a tenant to remove snow and ice has been held liable to a third party for his failure to do so. (See *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168.) However, *Schoondyke* is factually distinguishable from the case at bar. In the present case, A&P is under no contractual obligation to remove snow from its park-

ing lot. It voluntarily assumed that duty and contracted with Robert Vasser to perform the physical snow removal. Thus, the only duty A&P owed to the plaintiff regarding the snowplowing was not to perform it negligently. As for Robert Vasser, plaintiff's allegation that he may not have performed his job in accordance with the terms of his contract with A&P is not sufficient to impose liability. His obligation to comply with the contract was owed to A&P, not to plaintiff (see *Lewis v. W. F. Smith & Co.* (1979), 71 Ill. App. 3d 1032, 1038, 390 N.E.2d 39); Vasser's duty to plaintiff was to abstain from negligence. Consequently, absent evidence of an unnatural accumulation or negligent plowing operations, there is no showing of an existing duty on the part of the defendants. See *Burke v. City of Chicago* (1987), 160 Ill. App. 3d 953, 513 N.E.2d 984.

Finally, plaintiff claims that she should have been permitted to file an amended complaint pursuant to section 2—1005(g) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(g)), and that the court's failure to allow such an amendment constitutes an abuse of discretion. Section 2—1005(g) (effective September 14, 1985) provides that before or after the entry of summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms. The defendant argues that section 2—1005(g) does not alter the former state of the law, but as noted in the historical and practice notes, at 23 (Smith-Hurd Supp. 1987), this section simply "reaffirms the power of the court to permit amendments to pleadings at any time, as mandated by section 2—616(a) of the Civil Practice Law." Ill. Ann. Stat. ch. 110, par. 2—1005, Historical and Practice Notes, at 23 (Smith-Hurd Supp. 1987).

 █ Generally, once a final judgment is entered, the only amendments which may be made are ones to conform the pleadings to the proofs pursuant to section 2—616(c) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(c); *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 8, 373 N.E.2d 1326; *Evans v. Bachman* (1979), 78 Ill. App. 3d 1107, 1112, 398 N.E.2d 114.) To determine what effect section 2—1005(g) has on established law we must consider it in relation to the other provisions of the Code of Civil Procedure. It is a basic tenet of statutory construction that sections *in pari materia* should be construed with reference to one person so that both may be given harmonious effect. (*People v. Scheib* (1979), 76 Ill. 2d 244, 250, 390 N.E.2d 872.) Statutes are considered to be *in pari materia* when they have the same purpose or object or relate to the same person or thing. (*Gillespie v. City of Maroa* (1982), 104 Ill. App. 3d 874, 878, 433 N.E.2d 688.) The provi-

sions of the Code of Civil Procedure should not be read as an isolated text, but should be construed in light of the general purpose and object of the Code, so as to give effect to the main intent and purpose of the legislature as therein expressed. (See *Johnson v. Moon* (1954), 3 Ill. 2d 561, 566, 121 N.E.2d 774.) These provisions must be liberally construed so that controversies may be speedily and finally determined according to the substantive rights of the parties. *Curran v. Harris Trust & Savings Bank* (1952), 348 Ill. App. 210, 214, 108 N.E.2d 729.

■ Applying these principles we believe section 2—1005(g) to mean that before or after a grant of summary judgment, but before the summary judgment becomes final, the court shall permit pleadings to be amended upon just and reasonable terms. After final judgment, the only amendments which may be allowed are ones to conform the pleadings to the proofs pursuant to section 2—616(c). To hold otherwise would strip summary judgment of finality and would frustrate the purpose of the summary judgment procedure, which is to avoid the congestion of trial calendars and the expense and delay of unnecessary trials by summarily disposing of cases where no genuine issue of material fact is presented. (*Lopez v. Winchell's Donut House* (1984), 126 Ill. App. 3d 46, 49, 466 N.E.2d 1309.) While we are aware of decisions that interpret section 2—1005(g) differently (see *Siebert v. Continental Oil Co.* (1987), 116 Ill. App. 3d 891; *Ruff v. Northwestern Memorial Hospital* (1987), 159 Ill. App. 3d 811, 513 N.E.2d 7), we believe that our interpretation is in keeping with the legislative intent.

■ Having thus decided, we must now examine plaintiff's proposed amendment to determine whether it was supported by the proofs. In order to allow the amendment of a pleading allegedly to conform to proof, the proof already produced must support the amendment. (*Lawing v. Chicago Transit Authority* (1986), 142 Ill. App. 3d 119, 125, 491 N.E.2d 145.) The decision of whether to grant or deny leave to file an amendment is within the sound discretion of the trial court and that discretion will not be upset absent a clear and manifest showing of abuse. *Friestedt v. Chicago Transit Authority* (1970), 129 Ill. App. 2d 153, 156, 262 N.E.2d 771.

The second amended complaint contained essentially two allegations that were not present in the previous complaint: first, that plaintiff was injured because A&P negligently undertook plowing operations which made the condition of the parking lot more dangerous than it had been prior to snowplowing activities, and second, that plaintiff was injured as a result of the dangerous condition created by

the manner in which the defendants had piled up the snow that had been plowed.

There is absolutely no evidence in the record to indicate that the parking lot was more dangerous after it was plowed than before it was plowed and that allegation will be summarily dismissed. As discussed previously, there is also no evidence to support plaintiff's contention that the snowplowing was performed negligently. Consequently, we find that it was not an abuse of discretion for the trial court to deny plaintiff leave to file an amended complaint.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.