(No. 27601.—

MARIE LEBLANC, Appellee, *vs.* EMMA J. ATKINS, Appellant.

*Opinion filed September 19, 1944.*

J. EDWARD JONES, of Chicago, for appellant.

A. HENRY GOLDSTEIN, of Chicago, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county which set aside a deed plaintiff had executed and delivered to defendant conveying to her the fee title to two improved pieces of real estate. The theory of recovery, as alleged in the complaint, was that plaintiff, advanced in years and inexperienced in business matters, had sought and obtained the aid of defendant in business matters under circumstances creating a fiduciary relationship, and that during the existence of such relationship defendant obtained the title to the said lots by false and fraudulent means. The prayer was for a cancellation of the deed and an accounting for the rents. Defendant's answer denied the existence of the fiduciary relationship and pleaded facts which, if proved, would show the property was conveyed on the consideration that defendant was to support plaintiff and furnish her a home the remainder of her life.

The master to whom the cause was referred found a fiduciary relationship was proved, and that plaintiff had

not understood the nature of the transaction or that she was conveying the absolute title to the property. He found that the evidence did not establish a contract by which defendant was to furnish plaintiff a home, support and maintenance. On the accounting feature, he found defendant should be reimbursed for $215.89 advanced by her for the care of the property, which was a balance she had expended on the property over and above the rents she had received. He also found plaintiff was indebted to defendant for services rendered, in the sum of $275. Recommendations were made by the master in accordance with his findings, and after argument of exceptions the chancellor sustained the report and entered a decree in accordance with the recommendations. This appeal followed.

The evidence shows that on each of said tracts there was an apartment building, with three apartments each, that five of the apartments were rented, producing an aggregate monthly rental of $210, and the remaining apartment plaintiff occupied as her home. The property was old and in need of repair. The evidence shows that it was worth about $10,000.

Plaintiff's brother had owned the property but he created a joint tenancy and upon his death plaintiff became the sole owner. After his death she managed the buildings, did the janitor work and attended to the leasing and collecting of the rents. She had a foster daughter of immature years, who resided with her. In October, and again in November of 1941, plaintiff wrote defendant a letter in which she spoke of the trouble she was having with her foster daughter and asked defendant to come and stay with her. Defendant resided in Chicago and had known plaintiff five or six years but, prior to December, 1941, the relation was only a casual acquaintance. Defendant called at plaintiff's home as requested, and, after several interviews and various discussions, moved into the apart-

ment with plaintiff on December 27, 1941. She paid plaintiff $12 per month for a room until the deed was made March 31, 1942.

In January, 1942, plaintiff received a notice from the county collector in reference to delinquent taxes on the property for 1940. Defendant, at plaintiff's request, called at the collector's office and made inquiry as to the amount of taxes and possibility of the collector taking steps to enforce collection. The parties differ as to what defendant reported to plaintiff after making such inquiry. Plaintiff testified that defendant told her there would be an immediate sale of the property and plaintiff would lose possession. Plaintiff charges that she was not familiar with such matters and relied upon what defendant told her, and, in order to protect her interests in the property, she accepted defendant's offer to borrow the money and apply it on the taxes. Defendant denies she told plaintiff the property would be sold immediately or that plaintiff would be ousted of her possession. She testified she offered to arrange for the money to pay the taxes. Soon thereafter an attorney was engaged to prepare the deed transferring the property to defendant. The attorney selected was a stranger to both. He was recommended by an officer of the trust department of the Chicago Title & Trust Company.

Plaintiff and defendant went to the attorney's office February 5, 1942. During the interview it developed that there was a defect in plaintiff's title which would require a quitclaim deed to correct. This occasioned a delay and in the interval between the first visit to the attorney's office and the making of the deed March 31, 1942, plaintiff and defendant called at the office on two other occasions. Plaintiff's version of the conversations that occurred between her, defendant and the attorney on these various trips is in conflict with the testimony of defendant and the attorney. Plaintiff stated there was a discussion as to the

money defendant was advancing for the payment of taxes and that she signed the deed with the belief that she was executing an instrument to secure defendant for the money advanced. The testimony of defendant and the attorney is that plaintiff requested the preparation of the deed for the transfer of the absolute title to the defendant and that it was in consideration that defendant was to furnish her support, maintenance and a home for the remainder of her life.

The complaint charges the attorney with conniving with defendant in the making of the deed, but the master found there was no evidence of fraud on the part of the attorney. The record supports such finding.

Following execution of the deed, plaintiff signed notices addressed to the tenants directing them to pay their rent to defendant. After the deed was executed, defendant paid the taxes, caused repairs to be made and collected the rents. This arrangement continued until June 9, 1942, when she received a notice from plaintiff requesting a return of the property and accounting of the rents. There is evidence on behalf of plaintiff tending to show defendant was not furnishing plaintiff suitable food or comfortable quarters. There is also the evidence of third parties who stated of having heard defendant speak of sending plaintiff to another State. Such evidence is in direct conflict with the evidence of defendant and her witnesses, and since we conclude that the master was correct in finding that no contract for support was proved, it is not necessary to make further comment on evidence bearing on the failure of defendant to perform.

The master found that at the time of the transaction plaintiff was 72 years of age, inexperienced in business affairs and of less than normal intelligence in business transactions; that she requested the defendant to reside with her because of a desire for companionship and as-

sistance, and that during the period from December 27, 1941, to the execution of the deed March 31, 1942, plaintiff reposed confidence in defendant concerning her business affairs and during said period defendant exercised a dominant influence over plaintiff, and plaintiff relied upon defendant to negotiate and conclude any transaction with respect to her property. He found that when plaintiff executed the deed she did not intend to completely divest herself of ownership of the property. The master further found there was no written evidence of any promise of the defendant to support the plaintiff and provide her with a home, and that the evidence of an oral promise was vague and indefinite, and that it could not be enforced.

The evidence sustains the master's findings that plaintiff relied upon defendant to negotiate and conclude business transactions with respect to her property, and that from December 27, 1941, until the execution of the deed in March, 1942, there was a fiduciary relationship existing between the parties. It has been repeatedly stated by this court that equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may arise. It includes not only all legal and technical relations such as guardian and ward, attorney and client, principal and agent, and the like, but it extends to every possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. (*Fisher* v. *Burgiel,* 382 Ill. 42; *Kosakowski* v. *Bagdon,* 369 Ill. 252; *Beach* v. *Wilton,* 244 Ill. 413.) It is not necessary that the relation and duties involved be legal. They may be either moral, social, domestic, or merely personal. (*Seely* v. *Rowe,* 370 Ill. 336; *Mors* v. *Peterson,* 261 Ill. 532.) Transactions with a fiduciary are presumptively fraudulent and will be stricken down unless the fairness of such transaction is established by clear and convincing

proof. *Elsasser* v. *Miller,* 383 Ill. 243; *Children's Home of Rockford* v. *Andress,* 380 Ill. 452; *Seely* v. *Rowe,* 370 Ill. 336.

The burden was on defendant to prove that the transaction with her fiduciary was fair, that when consummated plaintiff had full knowledge of her rights and that plaintiff's interests had not been jeopardized to defendant's advantage. Tested by such rule, it is obvious that defendant's evidence does not meet such requirement. Receiving the deed as she did from her fiduciary, the obligation rested upon her to protect the fiduciary so that she would be able to receive the benefits of the only consideration she was to have for her property. Defendant's theory that there was a consideration to support the deed might be disposed of by a finding that the proof does not show plaintiff understandingly agreed to it, but conceding that she agreed to the arrangements as outlined in defendant's and the attorney's testimony, it is still short of proving the essential elements of a contract that would support this kind of transfer. The nature of plaintiff's support, the place where her home was to be, whether on this property or another, in this State or a foreign State, were important elements in a contract of this character. Other matters which were omitted from the agreement might be mentioned but these serve to illustrate the vagueness and indefiniteness of defendant's oral undertaking to furnish plaintiff support and maintenance.

The master found the issues on controverted questions of fact in favor of plaintiff and the chancellor has sustained such findings. This is not a case where a court of review may set aside a decree on the basis that the findings are not supported by the evidence.

The decree was correct and is affirmed.

*Decree affirmed.*