LILLIAN K. WARE, Plaintiff-Appellee, *v.* D.R.G., INC., *et al.*, Defendants-Appellants.

(No. 59502;

First District (1st Division)—February 11, 1974.

Allan L. Blair, of Chicago, for appellants.

James W. Kissell, Theodore N. Miller, George L. Saunders, Jr., and Gerald A. Ambrose, of Chicago (Sidley & Austin, of counsel), for appellee.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is a case of a property owner losing her $25,000 home for failure to pay a special assessment of $41.57. Lillian Ware, the plaintiff, filed a three-count complaint, the first count of which prayed for a declaration that the defendants, D.R.G., Inc. and David Gray held title to property at 1915 Foster Avenue in Evanston under a constructive trust for the plaintiff's benefit; that the court order the defendants to transfer title to her upon her payment of the amount paid at a tax sale by the defendants; and for a temporary injunction prohibiting the defendants from interfering with her use of the property. A memorandum of law and affidavits of the plaintiff, her tenant and her lawyer were attached. The defendants filed a motion to dismiss the first count on the grounds it did not state a cause of action and the issues were *res judicata* because of proceedings in the county division of the circuit court. After a hearing, the court denied the motion to dismiss and entered a temporary injunction from which the defendants have taken an interlocutory appeal.

In 1968, an installment of a special assessment levied on the plaintiff's property at 1915 Foster Avenue in Evanston became due. The installment was $41.57 and was not paid. On May 27, 1969, the plaintiff's property was sold at a tax sale to the defendant, D.R.G., Inc., for $59.81. Pursuant to statute, the plaintiff had until two years from the date of sale, or until May 27, 1971, to redeem her home. (Ill. Rev. Stat. 1971, ch. 120, sec. 734.) On May 25, 1971, the period was extended by D.R.G., Inc., to December 27, 1971.

On September 27, 1971, D.R.G., Inc., served notice on the plaintiff that a tax deed would be sought on the plaintiff's property if the property was not redeemed by December 27, 1971. No redemption was made. On March 7, 1972, D.R.G., Inc., paid all subsequent taxes due and secured an order in the county division of the circuit court which found that all notices required by law had been given, all subsequent taxes had been paid, and D.R.G. had complied with all statutory provisions entitling it to a tax deed. The order directed an issuance of a tax deed.

The plaintiff was unaware that the defendants had obtained title to her home on March 7, 1972; and when she did become aware of it she filed a petition under section 72 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, sec. 72), alleging that she had not been properly served with notice. After a hearing on August 24, 1972, Judge Robert J. Dempsey found that the plaintiff had received proper notice of the tax deficiency and denied the petition.

While the section 72 petition was pending, the plaintiff attempted to challenge the defendants' title to the property in a class action contesting the constitutionality of the Illinois statute in the U.S. District Court.

That complaint was dismissed. Thereafter, on June 12, 1973, the plaintiff filed a supplemental petition in the county division of the circuit court for leave to purchase back her homestead. Judge Dempsey denied the relief on the ground that he lacked jurisdiction.

On August 9, 1973, this complaint was filed in the chancery division of the circuit court. The complaint alleged as follows: The plaintiff was a divorced woman, 58 years of age, employed as an in-home practical nurse. The defendant Gray was an attorney at law and the principal stockholder in D.R.G. On several occasions she failed to pay the taxes promptly on the property due to "straitened financial conditions and a lack of a clear understanding of the nature and consequences of tax obligations. On some occasions, [her] home was sold at a tax sale for delinquent general taxes. However, on each occasion, when [she] was notified of what had occurred, she redeemed her property within the time allowed under law by paying the deficient tax with interest and penalties." She had paid all prior installments of the special assessment but did not pay the tenth installment which became due in 1968. On July 10, 1971 she suffered a severe heart condition which required her hospitalization until July 31, 1971. While she was in the hospital she called her attorney, Donald Frey, and asked him to pay her current taxes and to check the appropriate record with respect to her home to make certain that there were no outstanding tax obligations. Frey did check the records, found an obligation for unpaid 1968 general taxes recorded and reported this fact to the plaintiff. She promptly arranged to pay that obligation. On July 29, 1971, while she was still in the hospital, the defendant, David R. Gray, visited the premises and the next day caused a search to be made of the public records to determine the existence of any instruments, mortgages or claims affecting the property. She was forced to convalesce for several months after her discharge from the Evanston Hospital. During that period she did not work and was forced to spend most of the time in bed. On September 27, 1971, the defendants served notice pursuant to section 744, chapter 120, of the Illinois Revised Statutes that a tax deed would be sought on the plaintiff's property at a court hearing on January 6, 1972, if the property was not redeemed by December 27, 1971. Before the service of the notice, David Gray, "knew that the Plaintiff was an elderly woman of limited financial means and understanding of legal matters, that the Plaintiff had previously had tax deficiencies on her property but had always redeemed her home when it was imperiled by tax deficiencies, that the Plaintiff was or had recently been very ill, and that Plaintiff would have again redeemed her home if she had been fully aware of the consequences of her failure to do so. Notwithstanding this knowledge, [the

defendants] made no effort to communicate with [her] about the consequences of her tax deficiency other than through the formal service of the notice of September 27, 1971." Her failure to pay the tax installment or to redeem her property before the issuance of the tax deed was, "at the worst, due to excusable neglect on her part. By virtue of [her] prior experience with the tax system of Cook County, she had developed over the years a high degree of confidence and trust in the fair and impartial administration of that system and in the fairness, honesty and integrity of those individuals and corporations that participated in and were a part of the tax system in connection with the sale of property for delinquent or unpaid taxes. By virtue of Defendant Gray's position as an attorney and officer or the courts, by virtue of Defendants' relationship to plaintiff, by virtue of their knowledge of the Plaintiff, and in light of all the circumstances of this situation, the Defendants, and particularly the Defendant Gray, occupied a fiduciary relationship to Plaintiff. Under all the circumstances of this case [the defendants] have breached their fiduciary duties to Plaintiff and have unjustly enriched themselves by the acquisition of legal title to Plaintiff's home."

At the outset we observe that this complaint is based on the conclusion that a fiduciary relationship existed, that the fiduciary duty was breached by the defendants, and their breach resulted in their unjust enrichment. The threshold question becomes whether it alleges facts which, if proved, would support such a conclusion. In this regard, we must reject the argument of the plaintiff that "[e]ven if it should be determined that Plaintiff has not stated facts sufficient to support the imposition of a constructive trust on the theory of a fiduciary relationship, the Complaint states a valid cause of action under Illinois law," which recognizes "that courts of equity have an all encompassing power to right wrongs, irrespective of the ability of a court to fit its relief into some historical mold." A reading of the complaint which we have set out in part above leads only to the conclusion that the plaintiff charges only a breach of a fiduciary relationship and not an appeal to any "all-encompassing power" in courts of equity. Indeed, the memorandum of law submitted in the trial court recited in pertinent part:

> "The complaint in this case alleges a fiduciary relationship between the plaintiff and the defendants and charges that the defendants have unjustly enriched themselves at plaintiff's expense. * * *. Hence, the only issue is whether plaintiff can sustain the allegation of a fiduciary relationship." (Emphasis added.)

■■ The general rule concerning fiduciaries is stated in a case cited by the plaintiff, Warren v. Pfeil, 346 Ill. 344, 360, 178 N.E. 984:

> "A fiduciary relationship is not limited to cases of trustee and

*cestui que trust,* guardian and ward, attorney and client, and other recognized legal relationships, but extends to every possible case in which there is confidence reposed on one side and a resulting superiority and domination on the other. The origin of the confidence may be moral, social, domestic or merely personal. If the confidence in fact exists and is reposed by one party and accepted by the other the relation is fiduciary and equity will regard dealings between the parties according to the rules which apply to such relation. [Citations.]"

A reading of the complaint raises many questions, the first of which is: In whom did the plaintiff repose confidence? When the plaintiff says she reposed confidence in all "those individuals and corporations' that participated in and were a part of the tax system in connection with the sale of property for delinquent or unpaid taxes," that would include, for example, employees in the offices of assessor, the State's Attorney, the circuit court clerk, and the county treasurer, the holders of those offices, judges and all individuals and agents of corporations who purchased tax delinquent property at any time. This list is by no means all-inclusive. We cannot place the stamp of validity upon an allegation that makes countless persons, unknown for the most part to the plaintiff, the repositories of that degree of confidence necessary to establish a fiduciary relationship.

The second question is: The plaintiff was confident the individuals would do what? There is no allegation specifying what the plaintiff was confident all these unnamed individuals or the defendants would do. Rather, the complaint, at best, may be construed as an assertion that she expected that all the individuals described would be fair and honest and would possess integrity. In *Aaron v. Dausch,* 313 Ill.App. 524, 534, 40 N.E.2d 805, the court held that the allegation of a fiduciary relationship constituted a mere conclusion and "a mere assertion of faith and trust in numerous persons [was] insufficient."

■ The third question is: Did Gray accept the confidence reposed in him? The plaintiff argues that he did so when he was sworn in as an attorney at law. Thus, if any lawyer buys tax delinquent property pursuant to all the requirements of the statute, he does so at the peril of receiving a non-merchantable title because peculiar circumstances may be present which impose upon him undefined conduct beyond the requirements of the law and the canons of ethics. Indeed, to impose a duty on every *lawyer* "to communicate with [property owner] about the consequences of [their] tax deficiency other than through the formal service of notice" could well put him in peril of violating those canons of ethics. This argument of the plaintiff is manifestly unacceptable.

 The existence of a fiduciary relationship "must be shown by proof so clear and convincing, so strong, unequivocal and unmistaking that it leads to only one conclusion" (*In re Estate of Nelson*, 132 Ill.App.2d 544, 551, 270 N.E.2d 65, 70); and the proof must show confidence reposed by one side and domination and influence exercised by the other (*LeBlanc v. Atkins*, 387 Ill. 360, 56 N.E.2d 770). There are no facts alleged so strong, unequivocal and unmistaking that would lead to the conclusion that Gray was a fiduciary; nor are there any facts alleged which would support a finding that he dominated and influenced the plaintiff. For these reasons we conclude that the plaintiff has failed to state a cause of action and the complaint should have been dismissed.

It would unnecessarily prolong this opinion to answer every case cited by the plaintiff. It is enough to say that none of them is factually apposite. Nor did any of them make so sweeping a holding as we are asked to make here. One, however, is worthy of discussion. In *Spoon-Shacket Co. v. County of Oakland*, 356 Mich. 151, 97 N.W.2d 25, the plaintiff's property was improperly assessed at ten times its actual value. The plaintiff sought to pay under protest, unaware that an error had been made, but was refused. He paid the assessment without seeking relief from the Board of Review as required by statute. The Supreme Court of Michigan overruled previous decisions and upheld "the right of taxpayers to equitable relief from the unconscionable effect of *crass mistakes* of public officials in the field of taxation; mistakes gross enough to constitute fraud." (Emphasis added.) The defendants here have not overtly misled the plaintiff as the assessor in *Spoon-Shacket* did; they have not committed "crass mistakes" constituting fraud. They have done nothing but follow meticulously the procedures dictated by the legislature which have been upheld by the Supreme Court. *Gage v. Webb*, 141 Ill. 533, 31 N.E. 130; *Taylor v. Wright*, 121 Ill. 455, 13 N.E. 529; *Frew v. Taylor*, 106 Ill. 159.

The plaintiff argues that we need not discuss the merits of the case since the granting of a temporary injunction rests in the sound discretion of the trial judge and that she is not required to make a showing of ultimate success on the merits citing *Young v. Federal Union Surety Co.*, 183 Ill.App. 278. That case is authority for the proposition that in cases where the plaintiff's right to prevail may be doubtful and less harm will accrue to the enjoined party if he is ultimately successful than would accrue to the petitioner in the absence of an injunction, a reviewing court will not substitute its judgment for that of the trial court in the exercise of its discretion. The plaintiff also states in this court that she need not state a cause of action to be entitled to a temporary injunction. It is noteworthy, therefore, that the court in *Young* specifically addressed

itself to the question of the sufficiency of the complaint and held that it could support the relief prayed for.

In *Biehn v. Tess*, 340 Ill.App. 140, 142, 91 N.E.2d 160, the appellate court rejected the argument advanced here and reversed an order granting a temporary injunction where the complaint failed to state a cause of action. And in *Curran v. Harris Trust & Savings Bank*, 348 Ill.App. 210, 213, 108 N.E.2d 729, the court said:

> "[The section granting the right to an interlocutory appeal from an order granting an injunction] has been interpreted by our courts to permit the party appealing from the interlocutory order to ask this court to determine not only whether the trial court had the discretionary right to issue the temporary injunction but also to consider whether or not the complaint upon which the temporary injunction was issued was proper and sufficient to sustain such injunction. [Citations.]"

See also *Stine v. Chicago Transit Authority*, 13 Ill.App.3d 219, 300 N.E.2d 548.

We therefore conclude that, since the plaintiff has not alleged fraud nor sufficiently pleaded a fiduciary relationship or the breach thereof, she cannot maintain an action to impose a constructive trust. (*Peters v. Meyers*, 408 Ill. 253, 96 N.E.2d 493; *Janes v. First Federal Savings & Loan Association of Berwyn*, 11 Ill.App.3d 631, 297 N.E.2d 255.) For these reasons we judge that the temporary injunction should not have been granted.

■■ We are not unmindful of the hardship imposed on the plaintiff by the application of the law, but what was said in *Stanley v. Bank of Marion*, 23 Ill.2d 414, 420, 178 N.E.2d 367, is appropriate:

> "It is, of course, unfortunate that appellees have suffered the loss of their property because of one year's delinquent taxes. It is clear, however, that they were fully informed of the sale and were afforded every opportunity to redeem or defend. Having failed to do so, they are in no position to collaterally attack the original tax proceedings. [Citations.]"

In view of our determination of this question, it is unneccessary to decide whether the decision of the County Division was *res judicata*.

The order of the circuit court is reversed.

Order reversed.

GOLDBERG and HALLETT, JJ., concur.