STRATA MARKETING, INC., Plaintiff-Appellant, v. GAIL M. MURPHY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—99—2749

Opinion filed December 6, 2000.

Gordon, Glickman, Flesch & Woody, of Chicago (James S. Gordon and Don E. Glickman, of counsel), for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago (Diane M. Jehl and Thomas R. Dee, of counsel), for appellees.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Strata Marketing, Inc. (Strata), appeals from an order of the circuit court granting defendants Gail Murphy (Murphy) and VNU Marketing Information Services, Inc.'s (VNU) (collectively defendants) section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1998)) Strata's amended complaint seeking injunctive relief for breach of an employment agreement and violation of the Illinois Trade Secrets Act (the Act) (765 ILCS 1065/1 *et seq.* (West 1998)) based on breach of a covenant not to compete and disclosure of confidential information. On appeal, Strata contends that the trial court erred in dismissing its amended complaint because it set forth sufficient facts to state a cause of action for breach of the employment agreement and sufficient facts to state a cause of action under the Act. For the reasons set forth below, we affirm in part, reverse in part, and remand in part.

Murphy was employed by Strata as a sales representative for its Midwest and North Atlantic regions. Strata develops software programs that analyze and enhance market data provided by radio and television rating programs—a very unique and small niche of the software market. Strata then leases its software to customers throughout the United States. The software allows Strata's customers to tailor their marketing programs to meet the needs of their own

advertising customers. Strata's principal customers are advertising agencies and corporate in-house advertising departments. The names of advertising agencies and in-house corporate departments who actually use such software are not readily available and are quite difficult to identify. In this respect, Strata employs three full-time sales coordinators to develop leads for sales representatives. The coordinators compile lists of software users and prospective customers by extensive market research and at great expense. Strata services its· customers through its sales representatives.

Marketing Resources Plus (MRP), which is a division of VNU and successor to MMP, which VNU had purchased and changed its name from MMP to MRP, is Strata's principal competitor. MRP develops the same type of software and leases it to its customers just as Strata does. The competition between the two companies is "fierce."

Murphy's duties with Strata required her to service existing customers and solicit new customers. She worked with the sales coordinators, who provided her with appointments, prospective customers, sales leads, and lists of existing customers to call. As a condition of employment, Murphy signed both an employment agreement and an "Employee Confidentiality Agreement" (confidentiality agreement), which was made a part of the employment agreement. Pursuant to paragraph 1 of the confidentiality agreement, Murphy agreed not to disclose any of Strata's confidential information, including "all information not generally known in the relevant trade or industry which was obtained from Strata, or which was learned, discovered, developed, conceived, originated, or prepared by [Murphy] in the scope of her employment." The alleged confidential information fell within the following categories: existing products and products under development; business plans; product development plans, including progress, targeted marketing dates, and anticipated cost; sales or marketing methods; internal business procedures, including Strata's techniques for servicing customers, formulas for computing the reach and frequency of radio and television stations, methods used to compute ratings, and strategies and techniques to sell against competitors; customer lists, existing and prospective; customer contracts, including dates, terms, prices, and discounts; specific requirements of Strata's customers; form contracts; supply services; contracts with suppliers; various price structures for different locations and different customers; range of prices within which the sales representatives could negotiate; plans for upgrades and enhancements based on customer-identified problems and requests; and any other information Strata advised was to be kept confidential.

Pursuant to paragraph 6 of the confidentiality agreement, Murphy agreed:

"During the period of her employment with Strata and for a year following her termination from Strata, *** she will not render, directly or indirectly[,] any services of an advisory or consulting nature or as an employee or otherwise to any business which is a competitor of Strata, including but not limited to *** MMP [subsequently known as MRP]."

Strata used the following methods to maintain the confidentiality of its information: limited computer network access and use; provided its employees with information on a "need to know" basis; kept records of who logged on to the computer network and when; kept customer contracts under lock and key and only provided each sales representative with access to his or her own customers' contracts; shredded drafts of contracts; and required each sales representative to sign a confidentiality agreement.

Murphy resigned from Strata, effective May 28, 1999. She accepted employment with MRP as a sales representative and was to begin her employment on July 19.

On July 12, Strata filed a verified complaint for injunctive relief and damages against defendants based on a breach of the employment agreement (count I) and violation of the Act (count II). Strata also filed a motion for a temporary restraining order (TRO), seeking to prohibit Murphy from beginning employment with MRP on July 19. On July 16, defendants filed a motion to dismiss Strata's complaint. In response to this motion, Strata sought and was granted leave to file an amended complaint. On July 19, Strata filed its amended complaint (complaint) and amended motion for a TRO.

With respect to count I, Strata alleged that Murphy had breached paragraph 1 of the confidentially agreement because, on information and belief, she had retained lists of its existing customers, lists of companies that utilized media buying software, and other aspects of its confidential information. Strata also alleged that Murphy was in direct violation of paragraph 6 of the confidentiality agreement because she agreed not to provide services to any business that was a competitor of Strata's for one year following her termination, yet she accepted employment with MRP. MMP was included in the agreement's list of competitors, of which MRP was a successor. In its prayer for relief on count I, Strata sought a preliminary and permanent injunction prohibiting Murphy from accepting or continuing employment with MRP, from disclosing confidential information to MRP, and prohibiting MRP from employing Murphy. Strata further requested damages and such other relief as the court deemed appropriate.

With respect to count II, Strata alleged that the following confidential information constituted "trade secrets" as defined by the

Act: new software development; progress of such development; target date for marketing new software; anticipated charges for licensing new software; the cost structure for existing software; Strata's analysis of market conditions; Strata's analysis of competition for licensing; range of prices in which representatives were authorized to negotiate; existing customer lists; contract terms; contract expiration dates; different price structures for different locations for different customers; plans for product upgrades and enhancements that were based on customer-identified problems and customer-requested changes; lists of prospective customers compiled by Strata's coordinators; Strata's techniques for servicing customers; Strata's formulas for computing reach and frequency of radio and television stations; Strata's procedures for handling raw data; Strata's formulas to compute station ratings; and Strata's strategies and techniques to sell its products. Strata alleged that the above-identified information was sufficiently secret to derive economic value. According to Strata, if MRP secured this information, it would derive a significant competitive advantage over Strata. Strata also alleged that it had made reasonable efforts to maintain the secrecy of this information.

Strata further alleged that Murphy had already disclosed confidential information, that there was a threat of disclosure, and that confidential information would inevitably be disclosed. With respect to actual disclosure, Strata alleged that, since terminating her employment, Murphy had disclosed confidential information to MRP. Specifically, Strata alleged: "A prospective customer of Strata's stated to a Strata representative that she was told of 'problems' in Strata's software by an MRP sales representative. The MRP sales representative told the prospective customer that she obtained the information from 'a former Strata representative.' On information and belief, the former representative is Murphy."

With respect to threatened and inevitable disclosure, Strata alleged that virtually all of the information Murphy had obtained while working for it would assist her in targeting new customers for MRP. The information would enable her to claim that MRP's products were better because they did not suffer from the same problems as Strata's products, that enhancements and upgrades would be superior, that enhancements and upgrades would be available sooner, and that MRP's prices would be the same or lower than Strata's. Strata further alleged that, because of Murphy's knowledge of contract expiration dates, she would be able to target customers whose contracts were to expire soon. Similarly, she could use her knowledge about Strata's price structure to undercut Strata. Because all of this information was information a sales representative customarily relies upon to solicit

new customers, Murphy, in her attempt to obtain customers for MRP, would disclose, and could not avoid inevitably disclosing Strata's confidential information. Therefore, according to Strata, only by restraining Murphy from employment with MRP could Strata's trade secrets be protected. Strata sought a preliminary and permanent injunction prohibiting Murphy from accepting or continuing employment with MRP and from disclosing trade secrets, and a preliminary and permanent injunction restraining MRP from employing Murphy and receiving Strata's trade secrets. Strata also requested such other relief as the court deemed appropriate, damages for disclosure of confidential information, and costs.

On July 22, defendants filed a motion to dismiss Strata's complaint, contending that the covenant not to compete was overbroad. Defendants further contended that Strata failed to set forth a cause of action for violation of the Act. Specifically, defendants argued that: the covenant not to compete was overbroad and therefore void because it failed to include geographical and activity restrictions; Strata had no protectable interest in its customer lists; Strata could not turn the overbroad confidentiality agreement into a noncompete provision because there was no temporal or geographic limitations; the court should not judicially modify the agreement; and Strata had failed to allege sufficient allegations to support a finding of actual or threatened misappropriation of an alleged trade secret.

The trial court granted defendants' motion to dismiss and denied Strata's request for a TRO. In ruling, the court stated:

"I am bound to look at the contract that you are trying to enforce. *** In the four corners of this amended complaint, I say, most respectfully, you have not met muster; and I'm not going to rewrite a contract.

It is totally unenforceable. It is so broad you don't have to limit it to the Continental United States or the 50—51 states. You can go all the way around the world. She can't work for any company that competes with Strata ***.

This contract is unenforceable. The TRO will be denied for the reasons set forth on the record.

\* \* \*

The TRO is denied. Case is ended. I'm not going to enforce the restriction.

Prepare the order. For the reasons set[ ] forth on the record.

\*\*\*

MR. GORDON [Strata's counsel]: I take it you're granting the motion to dismiss.

\*\*\*

I take it you're not only denying my motion [for TRO] but granting the motion to dismiss.

THE COURT: I absolutely did."

Strata filed this appeal, contesting only the trial court's judgment granting defendants' motion to dismiss.

## ANALYSIS

### Motion to Dismiss

Subsequent to Strata's filing of its appeal, defendants filed a motion to dismiss it pursuant to Supreme Court Rule 361 (177 Ill. 2d R. 361), which was taken with the case. For the following reasons, defendants' motion to dismiss the appeal is denied.

In their motion to dismiss, defendants contend that we lack jurisdiction over this appeal because Strata failed to appeal the denial of its TRO. According to defendants, the trial court's judgment on the TRO is the law of the case and the judgment is *res judicata* because the only issues raised in the appeal also formed the basis for denial of the TRO.

Strata argues that it elected not to appeal the denial of the TRO pursuant to Supreme Court Rule 307(d) (166 Ill. 2d R. 307(d)), but chose to appeal the dismissal of its complaint pursuant to Supreme Court Rule 303 (155 Ill. 2d R. 303). Strata contends there is no rule that it must appeal the TRO judgment. Strata further argues that the TRO had no dispositive effect on the substantive issues of the underlying lawsuit. Strata also contends that even if it had appealed the TRO judgment pursuant to Rule 307(d), it would still have had a right to appeal pursuant to Rule 303. Strata further contends that existing law does not support defendants' motion and there is no good-faith argument to extend, modify, or reverse existing law. Strata therefore asks this court to deny defendants' motion and award it sanctions pursuant to Supreme Court Rule 375 (155 Ill. 2d R. 375).

When the parties appeared on Strata's motion for a TRO, the trial court indicated that defendants had filed a motion to dismiss the day before and that this motion "takes precedence over everything." It then allowed counsel to argue the issues presented in the motion to dismiss. After argument, the trial court denied Strata's TRO and, as an apparent afterthought, granted defendants' motion to dismiss. The substance of the court's ruling was that the covenant not to compete was unenforceable.

During oral argument before this court, Strata's counsel conceded, with respect to count I of Strata's complaint, that Strata was abandoning its pursuit of injunctive relief since the one-year noncompete period had expired. However, counsel did state that Strata would not abandon the damages relief sought under count I.

It would unnecessarily prolong this opinion to distinguish every

case cited by defendants in support of their arguments on this issue. We briefly note that *Friedman v. Thorson*, 303 Ill. App. 3d 131, 707 N.E.2d 624 (1999), *Harper v. Missouri Pacific R.R. Co.*, 264 Ill. App. 3d 238, 636 N.E.2d 1192 (1994), *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 596 N.E.2d 712 (1992), *In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 & Petition for Tax Deed of Leslie C. Barnard*, 228 Ill. App. 3d 719, 593 N.E.2d 538 (1991), and *Wolfe v. Illini Federal Savings & Loan Ass'n*, 158 Ill. App. 3d 321, 511 N.E.2d 828 (1987), all simply stand for general propositions of law. Additionally, *Battaglia* is not factually relevant because the procedural history of that case is quite dissimilar to the procedural history of the instant case. In *Battaglia*, a preliminary injunction issued and a year later the defendant filed a motion to dissolve the injunction, whereas in the present case, Strata's motion for a TRO was denied and defendants' motion to dismiss Strata's complaint was granted. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 447 N.E.2d 288 (1983), is not relevant either. In *Stocker Hinge Manufacturing Co.*, while the court stated the general proposition that the failure to appeal an order denying a motion to dissolve a TRO becomes the law of the case, the issue there was completely different. The issue revolved around what the defendant had to prove in order to be entitled to damages for an erroneously entered TRO, whereas here no TRO issued and the case did not involve damages for an erroneously entered TRO.

While neither party cites to the following cases, with the exception of *Akhter v. Shah*, 205 Ill. App. 3d 940, 563 N.E.2d 898 (1990), and *Williams v. Nagel*, 251 Ill. App. 3d 176, 620 N.E.2d 1376 (1993), the cases establish general rules regarding appeals from injunctive relief and dispositive motions, depending on whether a TRO or preliminary injunction was granted or denied. Where the TRO or preliminary injunction is granted, a reviewing court may also examine the sufficiency of the plaintiff's complaint. In *Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 447 N.E.2d 1371 (1983), the court stated that an interlocutory appeal under Rule 307 does not open the door to a general review of all orders entered by the trial court up to the time of the appeal. However, when temporary injunctive relief has been granted:

> "[A]n appellant may ask the appellate court not only to determine whether the trial court properly exercised its discretion but also whether the complaint upon which the temporary injunction was based was proper to sustain an injunction. [Citation.] The right to injunctive relief necessarily brings into question the sufficiency of

the complaint, and the defendant who does not stand on his motion to dismiss the complaint may nevertheless contend on appeal from an interlocutory order that the complaint does not set forth grounds for any relief. [Citation.] Thus, whether an order preceding an interlocutory order from which an appeal is taken may be considered during the interlocutory appeal depends on its relationship to the order appealed from." *Olympic Federal*, 113 Ill. App. 3d at 984.

In *Alfred Engineering, Inc. v. Illinois Fair Employment Practices Comm'n*, 19 Ill. App. 3d 592, 312 N.E.2d 61 (1974), the trial court granted the plaintiffs' motion for a TRO, denied the defendant's motion to vacate same, and later entered a preliminary injunction. The defendant appealed. Although the *Alfred Engineering* court stated that, upon interlocutory appeal, it was not the court's duty to reach the merits of the case, the court nonetheless dismissed the plaintiffs' complaint. According to the court, "the appellant is permitted to ask this court to determine not only whether the trial court had the discretionary right to issue the temporary or preliminary injunction but also to consider whether or not the complaint upon which the temporary injunction was issued was proper to sustain such injunction [citation] or to sustain a judgment." *Alfred Engineering, Inc.*, 19 Ill. App. 3d at 600. The *Alfred Engineering* court dismissed the complaint, finding that the plaintiffs did not suffer an injury and that they had an adequate remedy at law. Thus, it held that the trial court's grant of a preliminary injunction was erroneous. The *Alfred Engineering* court further stated "that the permanent relief sought cannot be obtained upon this complaint by these plaintiffs, thus remandment to the circuit court for further consideration is not warranted." *Alfred Engineering, Inc.*, 19 Ill. App. 3d at 603. See also *Ware v. D.R.G., Inc.*, 17 Ill. App. 3d 758, 763, 307 N.E.2d 740 (1974) (on interlocutory review following the trial court's denial of a motion to dismiss the plaintiff's complaint and allowance of a temporary injunction, the appellate court concluded that the complaint failed to state a cause of action and therefore should have been dismissed); *Curran v. Harris Trust & Savings Bank*, 348 Ill. App. 210, 213, 108 N.E.2d 729 (1952) (the section allowing for interlocutory appeals has been interpreted to allow a reviewing court to determine not only whether the trial court properly issued a temporary injunction but also whether the complaint upon which the temporary injunction was issued was proper and sufficient to sustain such an injunction; the complaint was sufficient); *Biehn v. Tess*, 340 Ill. App. 140, 144-45, 153, 91 N.E.2d 160 (1950) (upon review of the trial court's denial of the defendants' motion to dismiss and allowance of a TRO, the appellate court rejected the plaintiff's argument that the defendants could not argue the sufficiency of the complaint in the in-

terlocutory appeal and that the only issue was the propriety of granting the TRO; the complaint failed to present a case for equitable relief because the plaintiff had an adequate remedy at law). In *Peterson v. Grisell*, 330 Ill. App. 587, 592, 597, 71 N.E.2d 832 (1947), where a TRO was granted and the defendant's motion to dismiss the complaint and motion to dissolve the TRO were denied, the appellate court held that both denials were reviewable under interlocutory appeal rules even though motions to dismiss generally are not reviewable because they are not final. However, in the interests of the prompt termination of litigation, the *Peterson* court believed that the appeal should lie and remanded the case to the trial court with directions that the court make the temporary injunction permanent and enter judgment in favor of the plaintiffs.

Conversely, where a TRO or preliminary injunction is denied and a defendant's motion to dismiss is granted, the motion to dismiss cannot be raised in the interlocutory appeal but rather must be raised in a separate appeal. In *Williams*, the trial court denied the plaintiffs' motion requesting a TRO, finding there were insufficient facts alleged in the complaint to show immediate and irreparable injury. The defendants filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)). A hearing was deferred on the motion to dismiss, but the court did hear the plaintiffs' motion for a preliminary injunction, which it denied. The defendants then filed various motions to dismiss and motions for summary judgment. The trial court granted the motions for summary judgment and dismissed the case. The plaintiffs appealed, attempting to appeal the denial of the TRO, the denial of the preliminary injunction, and the grant of summary judgment. The *Williams* court held that the plaintiffs lost their right to contest the propriety of the trial court's denial of the TRO and preliminary injunction because those orders were immediately appealable pursuant to Rule 307 and, because they failed to perfect an appeal, the plaintiffs lost their right to challenge the rulings. *Williams*, 251 Ill. App. 3d at 178-79. The court did hold, however, that the notice of appeal was timely regarding the granting of summary judgment. *Williams*, 251 Ill. App. 3d at 179.

In *Scott v. Assurance Co. of America*, 253 Ill. App. 3d 813, 625 N.E.2d 439 (1993), the plaintiff filed a lawsuit against the defendant seeking, *inter alia*, injunctive relief to prevent the defendant from refusing to allow the plaintiff to directly bill customers. After an evidentiary hearing, the trial court denied the plaintiff's request for injunctive relief and dismissed count III of the plaintiff's complaint. The plaintiff sought to appeal both rulings in a "notice of interlocutory appeal" pursuant to Rule 307. The *Scott* court stated it certainly had no

question that the denial of the request for preliminary injunctive relief was appealable pursuant to Rule 307. However, it did question whether the part of the order dismissing count III was appealable pursuant to that rule. The *Scott* court concluded:

> "[T]he issue of the sufficiency of the proof to ultimately decide count III is not before us in passing on an order *denying* temporary relief. The arguments of the parties are devoted almost entirely to the issue of preliminary relief. We conclude that we must *sua sponte* dismiss that portion of the appeal which pertains to the dismissal of count III in bar of action. The propriety of that ruling must be decided at a future time even though it is closely related to the issue before us." (Emphasis in original.) *Scott*, 253 Ill. App. 3d at 815.

■ We note that none of the above cases are factually on point. We have a unique situation in the instant case. Decisions were rendered almost simultaneously on both the TRO and motion to dismiss in the same hearing. Even though none of the cases discussed above are factually similar, we find their analyses and general rules instructive. Appeals from the denial of a TRO and from the granting of a motion to dismiss are separate appeals. Accordingly, we conclude that we have jurisdiction over Strata's appeal of the trial court's order granting defendants' motion to dismiss. This does not end our inquiry, however.

In the instant case, we have a TRO that was denied on the merits of the case. While the trial court did not identify the necessary elements for a TRO, the court's decision nonetheless is on the merits. The trial court unequivocally stated that the noncompete covenant was not enforceable and that it would never enforce it. We can infer from this finding that the trial court concluded that Strata could never succeed on the merits (one of the elements necessary for entry of a TRO). Strata did not appeal this ruling. Thus, although the trial court almost simultaneously ruled on the TRO and motion to dismiss, the decision on the TRO became the law of the case after the time period for appeal expired.

In *Akhter*, the trial court denied the plaintiff's request for a preliminary injunction to enforce a covenant not to compete, finding that the covenant in the employment contract was unenforceable because it did not identify what hospitals the defendant was precluded from working at, nor did it contain a time limitation. The plaintiff appealed, and we upheld the trial court's decision on this issue. *Akhter v. Shah*, 119 Ill. App. 3d 131, 135, 456 N.E.2d 232 (1983) (*Akhter I*). Upon remand on other issues, the trial court granted the defendant's motion to dismiss the complaint, presumably on the basis that the covenant not to compete had already been held unenforceable. We affirmed

(*Akhter v. Shah*, 205 Ill. App. 3d 940, 563 N.E.2d 898 (1990) (*Akhter II*)), finding that the trial court was bound to follow *Akhter I* because the question of the validity of the contract in *Akhter II* was based solely upon the same record earlier presented to the appellate court. While the plaintiff had presented a new affidavit upon remand, we concluded it contained the same evidence the plaintiff had presented at the preliminary injunction hearing. *Akhter*, 205 Ill. App. 3d at 943. Specifically, the *Ahkter II* court stated: "In this case, the noncompetition covenant has been held by this court to be unenforceable as a matter of law. Because the affidavit did not substantially affect the record or the law of the case, *Akhter I* remains binding on this court." *Ahkter*, 205 Ill. App. 3d at 943.

While *Akhter* involved two separate appeals, unlike the instant case, we nevertheless find it instructive. In the case at bar, even though Strata had the right to separately appeal the motion to dismiss, the facts and rulings on the TRO and motion to dismiss are intrinsically involved. The ruling on the TRO, that the covenant was unenforceable, is the law of the case. Thus, even if we determined that the trial court erred in granting the motion to dismiss, Strata would have no relief available upon any remand because the contract has been held unenforceable. Therefore, in the situation presented to this court, while we have jurisdiction to entertain Strata's appeal from the motion to dismiss, the issues raised with respect to the validity of the employment agreement are *res judicata*.

With respect to count II of Strata's complaint, the arguments made in the motion to dismiss do not relate to this count because the basis of the trial court's decision was the lack of geographical limitation. Whether or not the covenant contained a geographical limitation does not relate to, nor does it impact in any manner upon, a claim under the Act. 765 ILCS 1065/8(b)(1) (West 1998) ("contractual *** duty to maintain secrecy *** of a trade secret shall not be deemed to be void or unenforceable solely for lack of *** geographical limitation"). In fact, whether an employment agreement existed or not has no bearing upon the issues relevant to a claim under the Act because a confidentiality agreement is not a prerequisite to recovery under the Act. *Southwest Whey, Inc. v. Nutrition 101, Inc.*, 117 F. Supp. 2d 770, 779 (C.D. Ill. 2000).

Based on the above, we therefore deny defendants' motion to dismiss this appeal.

### Breach of Agreement

Strata contends it pled sufficient facts in its complaint to state a cause of action for breach of the employment agreement based on

Murphy's acceptance of employment with MRP in violation of the noncompete clause and Murphy's disclosure of confidential information. Specifically, Strata contends that the lack of a geographical restriction in its noncompete clause was reasonable in light of the fact that its business is nationwide, the restriction did not impose a hardship on Murphy or the public, the duration was reasonable, and Strata had a protectable interest in its confidential information. Defendants contend that the covenant is overbroad and imposed a hardship on both Murphy and the public.

Based on our discussion and decision in connection with defendants' motion to dismiss, we find that any issues with respect to the employment agreement are barred by *res judicata*. Therefore, we decline to address this issue on the merits.

## Trade Secrets Act

Strata next contends that its complaint sufficiently set forth facts to support a cause of action for violation of the Act. According to Strata, the allegations established that the confidential information it seeks to protect falls squarely within the definition of trade secrets under the Act because the information it has identified is the exact type of information specified in the Act. Strata further contends that its information is sufficiently secret to derive economic value because if MRP obtained the information, it would gain a significant competitive advantage over Strata. Strata argues that the facts show it made reasonable efforts to maintain the secrecy and confidentiality of the information. Lastly, Strata argues that the facts demonstrate Murphy was guilty of misappropriation of confidential information by actual disclosure, threatened disclosure, and inevitable disclosure. Strata requests that we adopt the inevitable disclosure doctrine set forth in *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995).

Defendants contend that Strata failed to protect any alleged confidential information because it did not take reasonable steps to keep its information secret. Defendants also argue that Strata failed to present facts to show either actual or threatened disclosure. Specifically, defendants contend that the alleged act Strata relied upon for actual disclosure was based on triple hearsay and, further, did not involve disclosure of confidential information. Defendants also contend that the facts alleged were insufficient because all Strata had alleged was that Murphy has information and Strata is fearful it will be disclosed. Lastly, with respect to inevitable disclosure, defendants contend that the facts alleged failed to support this theory because the facts only alleged, at best, that Murphy was hired in a similar, not identical, position.

Initially, we note that the trial court did not set forth any specific rationale for dismissing count II and did not rule on the requisite elements of a claim based upon a violation of the Act. The trial court stated, however, "Case is ended," indicating to us that the court nonetheless was ruling on and dismissing count II as well as count I.

■ A motion to dismiss under section 2—615 attacks the legal sufficiency of the complaint. *Van Horne v. Muller*, 185 Ill. 2d 299, 305, 705 N.E.2d 898 (1998). In considering a motion to dismiss, the trial court "must take all well-pleaded facts as true and draw all reasonable inferences from those facts that are favorable to the plaintiff." *Gardner v. Senior Living Systems, Inc.*, 314 Ill. App. 3d 114, 117, 731 N.E.2d 350 (2000). The trial court should only dismiss a cause of action if there is no set of facts that could be proven under the pleadings that would entitle the plaintiff to recover. *Gardner*, 314 Ill. App. 3d at 117. We review the trial court's decision *de novo*. *Gardner*, 314 Ill. App. 3d at 117.

■ ■ To set forth a cause of action for violation of the Act, a plaintiff must allege facts that the information at issue was: (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business. *Magellan International Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999).

The Act defines trade secret as

"information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d) (West 1998).

The supreme court in *ILG Industries, Inc. v. Scott*, 49 Ill. 2d 88, 273 N.E.2d 393 (1971), set forth the following factors as significant in determining whether a trade secret exists:

"(1) [T]he extent to which the information is known outside of [the plaintiff's] business; (2) the extent to which it is known by employees and others involved in [the plaintiff's] business; (3) the extent of measures taken by [the plaintiff] to guard the secrecy of the information; (4) the value of the information to [the plaintiff] and to [the plaintiff's] competitors; (5) the amount of effort or money expended by [the plaintiff] in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *ILG* Industries, 49 Ill. 2d at 93.

■ We conclude that Strata pled sufficient facts to withstand a motion to dismiss in connection with alleging the existence of trade secrets and reasonable efforts to protect its trade secrets. At least some of the information Strata argues constitutes a trade secret has been held to be a trade secret. For example, Strata's customer lists, which it alleged take considerable effort, time, and money to compile, could be deemed a trade secret and sufficiently secret to derive economic value. See *Stampede Tool Warehouse, Inc. v. May*, 272 Ill. App. 3d 580, 589, 651 N.E.2d 209 (1995). See also *Outsource International, Inc. v. Barton & Barton Staffing Solutions*, 192 F.3d 662, 668 (7th Cir. 1999) (cost and pricing figures, and comparable rates protectable as trade secrets). Moreover, many of the measures Strata employed to protect its confidential information have been considered by courts in determining whether a plaintiff's efforts were reasonable, *e.g.*, keeping information under lock and key (*Cincinnati Tool Steel Co. v. Breed*, 136 Ill. App. 3d 267, 278, 482 N.E.2d 170 (1985)), limiting computer access (*Gillis Associated Industries, Inc. v. Cari-All, Inc.*, 206 Ill. App. 3d 184, 191, 564 N.E.2d 881 (1990)), and requiring confidentiality agreements or other efforts by the employer to advise its employees that information imparted to them must remain confidential (*Gillis*, 206 Ill. App. 3d at 191). See also *Jackson v. Hammer*, 274 Ill. App. 3d 59, 68-69, 653 N.E.2d 809 (1995).

With respect to disclosure, Strata argues that it pled actual and threatened/inevitable disclosure in its complaint and urges us to adopt the inevitable disclosure doctrine.

In *PepsiCo*, two beverage industry companies (PepsiCo and Quaker) were involved in "fierce competition" with "sports drinks" and "new age drinks." *PepsiCo*, 54 F.3d at 1263. The defendant worked for PepsiCo as a general manager of one of the company's business units. He held a relatively high position and was given access to inside information and trade secrets. *PepsiCo*, 54 F.3d at 1264. The defendant then accepted a position with Quaker as a vice president/on-premise sales representative. However, the defendant told PepsiCo he had been offered a position with Quaker as chief operating officer, but had not yet accepted the position. *PepsiCo*, 54 F.3d at 1264. The defendant ultimately resigned from PepsiCo and PepsiCo filed a lawsuit, seeking a TRO prohibiting the defendant from assuming his position at Quaker and from disclosing trade secrets and confidential information. *PepsiCo*, 54 F.3d at 1265. The district court granted PepsiCo a permanent injunction, finding that the defendant's new job "posed a clear threat of misappropriation of trade secrets and confidential information that could be enjoined under Illinois statutory and common law." *PepsiCo*, 54 F.3d at 1267. On appeal to the Seventh Circuit Court

of Appeals, the question before the court involved the issue of threatened or inevitable disclosure. The court noted that there was little law in Illinois identifying what constituted threatened or inevitable misappropriation. *PepsiCo*, 54 F.3d at 1268. Contrary to the defendant's argument, the *PepsiCo* court held that inevitable disclosure was a theory available under Illinois law and that "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on plaintiff's trade secrets." *PepsiCo*, 54 F.3d at 1269. The *PepsiCo* court specifically stated that "[t]he defendants are incorrect that Illinois law does not allow a court to enjoin the 'inevitable' disclosure of trade secrets." *PepsiCo*, 54 F.3d at 1269.

The *PepsiCo* court then considered the question of what constituted inevitable misappropriation. The court looked to *Teradyne, Inc. v. Clear Communications Corp.*, 707 F. Supp. 353 (N.D. Ill. 1989), a case relied upon by defendants in the instant case, to determine what was insufficient to satisfy an inevitable disclosure allegation. In *Teradyne*, the plaintiff had simply alleged that the defendants could misuse its confidential information and that the plaintiff feared the defendants would misuse the information. The *PepsiCo* court agreed that these allegations were insufficient to support a claim based on inevitable disclosure. However, the *PepsiCo* court did state that the complaint would have passed muster if the plaintiff had alleged "that [the defendant] could not operate without [the plaintiff's] secrets." *PepsiCo*, 54 F.3d at 1268, citing to *Teradyne*, 707 F. Supp. at 356-57.

Unlike *Teradyne*, the *PepsiCo* plaintiff had asserted that the defendant "[could] not help but rely" on PepsiCo's confidential information as he performed his duties for Quaker. The *PepsiCo* court concluded that this was sufficient. As the *PepsiCo* district court had determined, "unless [the defendant] possessed an uncanny ability to compartmentalize information, he would necessarily be making decisions [for Quaker] by relying on his knowledge of [PepsiCo's] trade secrets." *PepsiCo*, 54 F.3d at 1269. The *PepsiCo* court noted that the defendant, whether consciously or not, would utilize the information. *PepsiCo*, 54 F.3d at 1269, citing 2 M. Jager, Trade Secrets Law § 7.02[2][a], at 7—20 (1994).

We believe *PepsiCo* correctly interprets Illinois law and agree that inevitable disclosure is a theory upon which a plaintiff in Illinois can proceed under the Act. Thus, we must ascertain whether Strata's complaint sufficiently alleged inevitable disclosure.

Strata alleged in its complaint, as follows:

"39. Murphy's employment by MRP necessarily creates the likelihood of the inevitable disclosure of confidential information ***.

Murphy cannot help but employ, in her new capacity as a salesperson for MRP's products which directly competes with Strata's products, her knowledge of the pricing structure of Strata's products, her knowledge of particular customer needs, her knowledge of customer identified problems with Strata's software, her knowledge of planned product upgrades and enhancements, and her knowledge of existing customer contracts. Even were Murphy to agree not to disclose any of this information, such agreement would be completely ineffective, because the confidential information acquired by Murphy during her employment by Strata is exactly the type of information that any salesperson needs and must use to effectively compete for customers against Strata and on behalf of a competitor such as MRP."

The complaint further alleged:

"58. MRP's employment of Murphy further threatens to, and will inevitably result in, the disclosure of Strata's confidential information. As a former Strata salesperson, virtually all of Strata's confidential information will assist Murphy in targeting new customers for MRP and will enable Murphy to claim to such potential customers that MRP's products do not suffer from the same problems as Strata's, that.MRP's product enhancements and product upgrades will be superior to Strata's, that MRP's new products will be available sooner than Strata's are or will be, and that MRP's prices are equal to or lower than Strata's. Furthermore, Murphy has knowledge of contract expiration dates for Strata's existing customers and will be able to focus her efforts upon those customers whose contracts will shortly expire. Murphy can further utilize her information about particular customer pricing offered by Strata to undercut Strata. Since all of this information is the type of information upon which salespersons customarily rely to convince prospective customers of the superiority of their product, Murphy's attempt to make sales for MRP will inevitably result in the disclosure of Strata's confidential information."

We conclude that Strata pled sufficient allegations, like the *PepsiCo* plaintiff, to withstand a motion to dismiss. Strata alleged that Murphy could not operate or function without relying on Strata's alleged trade secrets. Contrary to defendants' arguments, Strata's allegations are not like those in *Teradyne* where the plaintiff simply alleged that the defendant had information and Teradyne was fearful that the defendant would use it. Thus, we cannot say that Strata could prove no set of facts entitling it to relief. Strata's allegations were sufficient to withstand a motion to dismiss, but we make no comment or judgment on the merits of those allegations and Strata, upon remand of this cause, will be required to prove each element of a violation of the Act to the trial court.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County on count I of Strata's complaint. We reverse the circuit court's judgment on count II of Strata's complaint and remand the cause for further proceedings on count II consistent with the views expressed in this opinion.

Affirmed in part, reversed in part, and remanded in part.

CERDA and WOLFSON, JJ., concur.